THE UNION TRUST COMPANY, TRUSTEE, *vs.* MARY MC-KEON ET AL.

Third Judicial District, New Haven, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Apparent or ostensible authority in one person to act for another is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent possesses.

Union Trust Co. *v.* McKeon.

In the absence of countervailing facts, the possession of a mortgage deed and note by an agent of the mortgagee clothes him with an apparent authority to receive payments of principal on the mortgage loan. On the other hand, the want of such possession, while a circumstance of great significance and importance as tending to show the lack of such authority, is not necessarily and as matter of law decisive thereof; since other facts may justify the mortgagor in inferring, or a court in finding, its existence.

Ordinarily the existence of an apparent agency is essentially a question of fact, for the determination of the trier upon all the legitimate evidence in the case.

Where agency in fact is in issue, evidence of reputed agency is inadmissible.

Argued January 20th—decided March 3d, 1904.

ACTION to foreclose a mortgage of real estate, brought to and tried by the Superior Court in New Haven County, *Shumway, J. ;* facts found and judgment rendered for the plaintiff, and appeal by the defendants. *Error and new trial ordered.*

*A. Heaton Robertson,* for the appellants (defendants).

*John K. Beach* and *John W. Bristol,* for the appellee (plaintiff).

TORRANCE, C. J. The mortgage sought to be foreclosed was made in March, 1886, by John McKeon, to Bennett and Converse, trustees, to secure a note for $3,000 made by McKeon, payable on demand to the order of said trustees or the survivor of them. In June, 1890, Bennett as surviving trustee assigned said note and mortgage to Jane E. Winchester, who held them as owner until April 6th, 1894, when she assigned them to Luzon B. Morris as trustee. After the death of said Morris, his executor, in September, 1895, assigned said note and mortgage to the plaintiff as trustee, and the plaintiff is now the owner and holder of them.

The loan to McKeon was negotiated by Robert T. Merwin, a real-estate broker of New Haven. While the note and mortgage were owned by Mrs. Winchester, the mort-

gagor made two payments on the principal of the note to Merwin, one of $1,000 on the 10th of March, 1892, and one of $1,400 on the 18th of July, 1893. Merwin died before this suit was brought, without having paid Mrs. Winchester the money so received from McKeon, and without accounting for the same ; and McKeon and Mrs. Winchester are both dead.

The plaintiff claims that in receiving said money Merwin was the agent of McKeon ; while the defendants claim that he was the agent of Mrs. Winchester ; and this is the main question presented in the case. Upon the facts found, the trial court held that Merwin was not the agent of Mrs. Winchester in receiving these two payments. As bearing upon the question of Merwin's agency the controlling facts found are in substance these : —

Prior to the date of the note and mortgage in question Merwin, " a well-known and highly respected real-estate broker," requested Bennett and Converse, trustees, to loan the sum of $3,000 to McKeon, to be secured by the land described in the mortgage deed. Bennett examined the property and told Merwin that the proposed loan would be accepted. The mortgage deed and note were drawn by Merwin, executed by McKeon, and delivered to the trustees by Merwin, when they paid to him the amount of the loan, which he paid to McKeon. " No commission or other compensation for placing the loan was paid to Merwin by the trustees" ; and they neither saw nor personally dealt with McKeon in the transaction. " It does not appear whether or not McKeon dealt with Merwin under the belief that Merwin was the agent of the trustees in making said loan. . . . At no time was the note or mortgage in the possession of said Merwin, after the delivery of the papers to said Bennett and Converse in 1886." From the beginning McKeon paid the interest upon the note, as it became due from time to time, to Merwin. " No express authority was ever given to Merwin by any of said owners of the note, or by said Bennett as agent of Mrs. Winchester, to collect either principal or interest on the note. The interest on the note was

regularly paid by Merwin to Bennett as trustee, while said Bennett and Converse as trustees owned the note, and thereafter to Jane E. Winchester while she owned the note. No commission or compensation was paid by any of the owners of the note to Merwin on account of said payments of interest." It did not appear whether or not McKeon made the two payments of principal under the belief that Merwin was the agent of Mrs. Winchester to receive them. After the two payments were made to Merwin, he continued to pay to Mrs. Winchester and to the other owners of the note, down to the time of his death, the sum of $75 semi-annually, as interest upon the full principal of said note. After the first payment of $1,000 to Merwin, McKeon paid to Merwin interest at the rate of 5 per cent on the $2,000 ; and after the second payment of $1,400 he paid Merwin interest at the rate of 5 per cent on $600.

For many years prior to the time that the note became the property of Mrs. Winchester, Merwin had been her agent to collect the rents from various buildings belonging to her in the city of New Haven, and to make repairs on the same, for which services he received a commission or salary; and during the period that she was the owner of the note, to wit, from the 4th day of June, 1890, to the 6th day of April, 1894, the rents collected by Merwin for her amounted to at least the sum of $20,000 per annum, and during this period he negotiated and made leases of the various buildings belonging to Mrs. Winchester. For many years before, and during, the time that Mrs. Winchester held the McKeon note and mortgage, she loaned considerable sums of money through Merwin, secured by mortgages upon real estate, and in some cases Merwin received payments on the principal, and paid the same over to Mrs. Winchester, who accepted the same. But it did not appear that Merwin ever received any compensation for placing said loans, or that he was ever expressly authorized to collect or receive payments for her on account of the principal of said loans. At one time, while she owned the McKeon note, her bookkeeper sent to Merwin a list of the mortgages that Merwin had negotiated

for her. That list contained some twenty-nine mortgages, including the McKeon mortgage, representing loans amounting to $225,000. It was sent to Merwin with a request to ascertain the condition of the taxes upon the property mortgaged. Upon Merwin's books there was a list of the mortgages made by him for her, and among them appeared the McKeon mortgage, with a minute that $1,000 had been paid on the principal; and at the beginning of this suit there was and now is between the estate of Merwin and the estate of Mrs. Winchester an unliquidated account.

Upon these facts the trial court held that Merwin "never had actual or apparent authority" to receive any payment on account of the principal of the note.

Whether Mrs. Winchester ever gave Merwin express authority to receive payments of principal on the McKeon note was a question of fact, and the court has found that she never gave him any such authority; and no complaint is made about this finding.

The court has also found the fact that the note and mortgage were not in Merwin's possession when the contested payments of principal were made, and were never in his possession after he delivered them originally to Bennett and Converse; and of this finding no complaint is made.

In the court below the defendants claimed, in effect, that if the other facts found tended to support the inference that Merwin had such apparent authority, the fact that he did not have possession of the securities would not, as matter of law, be conclusive against such inference; and they asked the court below so to rule. The court did not so rule. It ruled that "so far as this apparent authority of Merwin was a question of law as a legal inference from the facts proven and found," it could not be drawn, "because it appeared that Merwin never had in his possession the note or mortgage after their execution and delivery to the original mortgagees." The court thus held, in effect, that such want of possession of the securities by Merwin was the controlling fact in the case; and that its existence, as matter of law, prevented the court from drawing any inference, from the other facts

found, that Merwin had apparent authority to receive the contested payments.

We think the court erred in ruling as it did, and that this error influenced its action in rendering the judgment in this case. Apparent or ostensible authority in one person to act for another, has been defined in one of the codes as follows : " Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Cal. Civil Code, § 2317. It is well settled that the acts of *A*, having apparent authority from *B* to do them, are, so far as third parties are concerned, binding upon *B*, although *A* had no actual authority from *B*. The question in such cases is not what authority *B* had in fact conferred upon *A*; it is whether a third party in dealing with *A* is justified in inferring that *A* had actual authority, from the evidence thereof with which *B* had clothed *A*. *Griggs* v. *Selden*, 58 Vt. 561 ; *Lawson* v. *Carson*, 50 N. J. Eq. 370 ; *Gallinger* v. *Lake Shore Traffic Co.*, 67 Wis. 529. If, in the case at bar, the McKeon securities had been in Merwin's possession, with Mrs. Winchester's allowance, at the time the contested payments were made, and the payments had been made in good faith in reliance upon the facts of such possession, Merwin would in law, as to such payments, be treated as the agent of Mrs. Winchester. In cases like that the law is well settled that possession of the securities by the agent, of itself, in the absence of counter-vailing facts, clothes the agent with apparent authority ; and justifies a third party, relying upon that fact and acting in good faith and without notice, in making payments upon the securities to the agent. *Wheeler* v. *Guild*, 20 Pick. 545 ; *Smith* v. *Kidd*, 68 N. Y. 130 ; *Crane* v. *Gruenewald*, 120 id. 274 ; *Haines* v. *Pohlmann*, 25 N. J. Eq. 179; *Lawson* v. *Carson*, 50 id. 370 ; *Central Trust Co.* v. *Folsom*, 167 N. Y. 285.

But while this is so, it does not follow that such possession is, as matter of law, essential to the existence of apparent authority, or that without it there can be no apparent authority. In reason, other facts may justify a third party

in inferring, or a court in finding, the existence of such authority; and we know of no case holding a contrary doctrine. On the contrary, it has been distinctly held that such possession is not in every case essential to the existence of apparent authority. *Doyle* v. *Corey*, 170 Mass. 337 ; *Quinn* v. *Dresbach*, 75 Cal. 159 ; *Fitzgerald* v. *Beckwith*, 182 Mass. 177. Of course, such possession or the want of it is ever, in cases of this kind, a fact of great significance and importance. Where, as in the case at bar, there is no instrument or other evidence which of itself and as matter of law establishes the claimed agency, actual or apparent, the existence of an apparent agency is essentially a question of fact, to be determined by the trier from all the legitimate and relevant evidence in the case bearing upon that question, unhampered by any such rule of law as the trial court in this case imposed upon itself; and because that court thus limited itself in its consideration of the facts found, we think there should be a new trial.

Upon the question whether the facts found, considered without reference to any such erroneous rule as the court laid down, would or would not support the judgment rendered, we express no opinion.

A single ruling upon evidence remains to be considered. To prove that Merwin was generally known in New Haven as the business and financial agent of Mrs. Winchester, the defendants asked a witness this question : " Do you know what the general opinion was as to the business relationship existing between " Mrs. Winchester and Merwin. The witness answered, " Yes." He was then asked to state what it was, and the court on objection of the plaintiff excluded the question.

The defendants apparently undertook to prove the fact that Merwin was reputed to be the financial agent of Mrs. Winchester. But that fact was not an issue in the case nor was it relevant to any issue in the case. The question was not whether Merwin was reputed to be, but whether he was, her agent; and the facts constituting agency could only be proved by witnesses having knowledge of them.

Where, as in this case, agency in fact is in issue, evidence of reputed agency is not admissible. The evidence was properly excluded.

There is error and a new trial is ordered.

In this opinion the other judges concurred.