**Ramon LOPEZ, Appellant,**

v.

**UNITED STATES of America, et al., Appellees.**

No. 98–5082.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 12, 1999.

Decided Jan. 18, 2000.

**479**

Before: GINSBURG, ROGERS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Ramon Lopez, an inmate in a federal prison, brought suit against the Drug Enforcement Administration, alleging that the agency failed to make an adequate effort to notify him of a forfeiture proceeding it had initiated against property he claims to own. The DEA sent two notices to Mr. Lopez—one to his home and one to a prison address—both of which were returned to the agency. One year later Mr. Lopez learned of the forfeiture proceeding through his wife, who had been separately notified by the DEA.

After the DEA denied as untimely his petition for remission or mitigation of the forfeiture, Mr. Lopez filed a complaint in the district court alleging the DEA denied him due process of law by failing to notify him of the forfeiture proceeding. The district court granted summary judgment in favor of the DEA, concluding that the agency had met its statutory and constitutional duty to notify Mr. Lopez of the forfeiture by sending notices to him and to his wife. Because the DEA, when the notices sent to Mr. Lopez were returned, made no further effort to notify him although it knew he was in prison, and because notice to his wife is not, on the facts of this case, notice to him, we reverse the judgment of the district court and remand this matter for further proceedings.

### I. Background

While Ramon Lopez was in the Martin County, Florida jail on a narcotics trafficking charge, he and his wife Alix Coba*

Charles B. Klein, appointed by the court, argued the cause as amicus curiae for appellant. With him on the briefs was Eric W. Bloom.

David L. Smith, Assistant U.S. Attorney, argued the cause for appellees. With him on the brief were Wilma A. Lewis, U.S. Attorney, and R. Craig Lawrence, Assistant U.S. Attorney.

* Amicus curiae appointed by this Court to represent Mr. Lopez on appeal points out that the couple actually were not married, nor could they have been considered married at common law because Florida does not recognize a common law marriage entered into after January 1, 1968. *See* FLA. STAT. ch.

741.211. Mr. Lopez, however, refers to Ms. Coba as his wife, and both the district court and the Government considered the couple to be married. For the purposes of this appeal, therefore, we too treat Mr. Lopez and Ms. Coba as husband and wife.

agreed to pay $50,000 to an official who would let Mr. Lopez post bond on a lesser charge. According to the Government, the payee was an "undercover law enforcement agent posing as a Deputy U.S. Marshal." The couple were convicted under federal law of attempted escape, and the DEA seized the $50,000, claiming it had reason to believe that Mr. Lopez had obtained the money through the sale of illegal narcotics.

In March, 1993 the DEA sent notices of seizure to Mr. Lopez both at his last known home address and at the Dade County Jail in Miami, Florida. Mr. Lopez states that he was never incarcerated in the Dade County Jail and the Government offers no explanation for having sent the notice there. In any event, both notices were returned to the DEA marked "RETURN TO SENDER." The DEA also sent to Ms. Coba, as a potential claimant in her own right, a notice of seizure, which she accepted, and it published a notice of the seizure in *USA Today* once a week for three consecutive weeks. The DEA did not receive any response to its notices and in May, 1993 it declared the $50,000 forfeited to the United States.

Mr. Lopez claims that he did not learn of the forfeiture until March or April, 1994, when Ms. Coba showed him the notice she had received, and that immediately thereafter he petitioned the DEA for relief from the forfeiture. The DEA dismissed Mr. Lopez's claim as untimely.

Mr. Lopez sought review in the district court, which granted summary judgment in favor of the DEA. The court held that the agency had satisfied its statutory and constitutional obligations by sending notices of seizure to "interested parties" via certified mail. The district court also imputed to Mr. Lopez the notice of seizure received by Ms. Coba, who "allegedly had dominion and control over the money in question" at the time of the crime.

Mr. Lopez appeals. We review the district court's grant of summary judgment *de novo*. *See National Treasury Employ-* ees Union v. United States Customs Service, 27 F.3d 623, 626 (D.C.Cir.1994).

## II. Analysis

The DEA seized Mr. Lopez's money pursuant to 21 U.S.C. § 881(a)(6), which authorizes the administrative forfeiture of property furnished or obtained in exchange for a controlled substance. A forfeiture proceeding is initiated under 19 U.S.C. § 1607(a), which requires the Government to send a written notice of forfeiture to each party who may have an interest in the seized property and to publish notice of its intent to seize the property in a newspaper of general circulation once a week for three consecutive weeks. A potential claimant then has 20 days in which to file a claim and to post a bond. *See* 19 U.S.C. § 1608.

■ The Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States require notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Taken together, the steps required by 19 U.S.C. § 1607(a) generally provide all the notice required for due process. *See id.* at 317–18, 70 S.Ct. 652.

■ In this case, the DEA complied with the statute by sending notices to Mr. Lopez at his home address and at prison and by publishing a notice of the proposed seizure in *USA Today* for three consecutive weeks. When both of the notices were returned to the DEA, however, the agency took no additional steps to determine Mr. Lopez's whereabouts despite its knowledge that Mr. Lopez was in the custody either of the State of Florida or of the Attorney General of the United States; that is, he was in one prison system or the other, as the DEA very well knew.

■] In these circumstances, the DEA's efforts to notify Mr. Lopez directly were inadequate to afford him due process of law. After learning that the two notices sent to Mr. Lopez were not delivered, the agency should have attempted to locate him within the prison system. We made this clear in *Small v. United States,* 136 F.3d 1334, 1337–38 (D.C.Cir.1998)—a decision issued after the forfeiture at issue in this case—where we held that the Government should have resent notice of a forfeiture proceeding to a claimant when the initial notices it sent to the claimant's home and to a prison—the wrong prison, as it happened—were returned:

> [W]hen the government knows (or can easily ascertain) where a person may be found, it must direct its notice there. . . .
>
> . . . .
>
> . . . [I]f . . . the government knows that a claimant is in prison, it . . . can easily . . . find out whether the prisoner has been moved or released (and if so, to what address), or whether some problem at the prison prevented delivery.

Recognizing the inadequacy of the DEA's efforts to notify Mr. Lopez directly, the Government argues that the notice the DEA sent to Ms. Coba was also "reasonably calculated" to reach Mr. Lopez because they were, or "appeared to all the world" including the DEA, to be married. To Mr. Lopez's observation that a marital relationship is not enough by itself to make one spouse the agent of the other for the purpose of receiving notice, the Government responds that an agency relationship is not required and that in any event, Ms. Coba had apparent authority to accept the notice on behalf of Mr. Lopez in view of her participation in the attempted escape and the "the alignment of her interest with his."

The Government's argument fails for two reasons. First, the notice sent to Ms. Coba concerned only her own interest in the money; it neither mentioned Mr. Lopez nor gave any indication that Ms. Coba should notify him or any other person who may have had an interest in the money. The absence of any suggestion that the notice was sent for a purpose other than informing Ms. Coba of her own interest in the proposed forfeiture renders the notice facially deficient as to Mr. Lopez, regardless whether Ms. Coba was his agent for the service of process. *Cf. United States v. Marolf,* 173 F.3d 1213, 1215, 1217 (9th Cir.1999) (noting that Government acknowledged notice was insufficient where Government notified co-defendant but failed to notify claimant after discovering his interest in same property).

Second, Ms. Coba's control over the money during the attempted escape did not cloak her with apparent authority to act for Mr. Lopez in all, or perhaps any, subsequent matters involving the money. Apparent authority is "the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." RESTATEMENT (SECOND) OF AGENCY § 8 (1958). Apparent authority arises "only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." *Id.* cmt. c.

The Government has not alleged any facts that made it reasonable for the DEA to believe that Ms. Coba was Mr. Lopez's agent for the purpose of receiving the notice of forfeiture. Even if Mr. Lopez had vested Ms. Coba with apparent authority to transfer his $50,000 to the marshal during the attempted escape, something more would be required before one reasonably could say that Mr. Lopez manifested his intention that Ms. Coba act as his agent for any other purpose. *Cf. United States v. $184,505.01 in U.S. Currency,* 72 F.3d 1160, 1164 (3d Cir.1995) (notice of forfeiture given to attorney who represented prisoner only in unrelated suit cannot be imputed to prisoner). The argument for apparent authority is further weakened by the nearly four month interval between Ms. Coba's delivery of the money and the

DEA's initiation of a forfeiture proceeding. Assisting another in a failed attempt to escape is hardly the type of ongoing activity from which one might reasonably infer continued authority to act on behalf of the would-be escapee. *Cf. Bye v. United States,* 105 F.3d 856, 857 (2d Cir.1997) (notice of forfeiture sent to attorney constitutionally sufficient when attorney represented prisoner in ongoing and related proceedings).

The Government attempts to bolster its argument for apparent authority by invoking general principles of agency between husband and wife. Thus, the Government notes that although, according to the RESTATEMENT (SECOND) OF AGENCY, "[n]either husband nor wife by virtue of the relation has power to act as agent for the other," the same authority states that "[t]he relation is of such a nature ... that circumstances which in the case of strangers would not indicate the creation of authority or apparent authority may indicate it in the case of husband or wife." *Id.* § 22 cmt. b. According to the Government, because Ms. Coba was Mr. Lopez's wife and because "she had already acted on his behalf, at her own peril, with regard to the very same $50,000 at issue, DEA had good reason to expect that notice to her would find its way back to [Mr. Lopez]."

The Government's argument misses the mark. A wife does not become the agent of her husband by once taking a risk on his behalf. Rather, it is a course of conduct that may give rise to the apparent authority of one spouse to act on behalf of the other. As the RESTATEMENT explains:

> [A] husband habitually permitted by his wife to attend to some of her business matters may be found to have authority to transact all her business affairs. Likewise, if a wife is customarily permitted by her husband to order household supplies, authority or apparent authority on her part to purchase things needed in the household can be readily inferred.

*Id.* Although the examples might benefit from some modernization, they make the point clearly enough: An act routinely performed by one spouse for the other may give rise to apparent authority for that spouse to perform the same or a closely related act. The RESTATEMENT does not support the Government's contention that Ms. Coba's single act of transferring Mr. Lopez's money vested her with apparent authority to receive for her husband notice that the money is subject to forfeiture. We therefore hold that Ms. Coba did not have apparent authority to receive the notice of forfeiture for Mr. Lopez.

## III. Conclusion

For the foregoing reasons, we reverse the order of the district court granting summary judgment for the Government. This matter is remanded to the district court for further proceedings on the merits of Mr. Lopez's challenge to the forfeiture of his property.

*So ordered.*