HOST AMERICA CORPORATION *v.* DEBRA
RAMSEY ET AL.
(AC 28488)

Gruendel, Lavine and Pellegrino, Js.

Argued March 10—officially released May 20, 2008

*David A. Ryan, Jr.*, with whom, on the brief, was *Heather L. Bannister*, for the appellant (plaintiff).

*Robert A. Richardson*, with whom, on the brief, was *Joseph D. Garrison*, for the appellees (defendants).

*Opinion*

GRUENDEL, J. The plaintiff, Host America Corporation, appeals from the judgment of the trial court denying it injunctive relief from arbitrating a breach of contract claim filed with the American Arbitration Association by the defendants, Debra Ramsey and Anne Ramsey. The plaintiff claims that the court abused its discretion when it denied its request for injunctive relief because it improperly (1) found that the secondary evidence produced by the defendants was sufficient to prove the former existence, present unavailability and contents of the defendants' employment agreements, (2) found that Geoffrey Ramsey,[1] the former chief executive officer of the plaintiff corporation, had the apparent authority to enter into employment agreements with the defendants on behalf of the plaintiff, and (3) shifted the burden of proof to the plaintiff to prove that the defendants' employment agreements were not executed validly and failed to make a finding regarding the validity of the agreements. We affirm the judgment of the trial court.

The plaintiff is a corporation in the business of providing food service and energy management services. The defendants are former employees of the plaintiff who worked for it from its inception in 1986. Anne Ramsey was the human resources director, a member of the plaintiff's board of directors and the sister of the plaintiff's founder and former chief executive officer, Geoffrey Ramsey. Debra Ramsey was an administrative assistant and is Geoffrey Ramsey's wife.

In early 2003, the plaintiff entered into negotiations to acquire GlobalNet Energy Investors, Inc. (GlobalNet), a Texas company engaged in energy management services. Geoffrey Ramsey feared that GlobalNet shareholders might gain control and decide to move the

---

[1] Geoffrey Ramsey was not a party to this action. As such, he is not a party to this appeal.

company to Texas, which he and the defendants were unwilling to do. After discussing his concern with David Murphy, the then chief financial officer and current chief executive officer of the plaintiff, Geoffrey Ramsey decided that he, the defendants and Murphy should have employment agreements. Geoffrey Ramsey contacted the plaintiff's attorney, John Wills, and Wills referred him to another attorney in his firm, Michael Belo, who would be able to assist him in creating the employment agreements. Belo drafted the agreements and e-mailed the final versions to Anne Ramsey on January 22, 2004. The agreements for Geoffrey Ramsey and Murphy contained a signature line for each of them individually and one for Thomas Eagan, the compensation committee chairman, on behalf of the board of directors. The defendants' agreements also had signature lines for each of them individually, but instead of having a signature line for Eagan, their agreements had a signature line for Geoffrey Ramsey. In addition, the defendants' agreements each contained an arbitration clause.

At some point in March, 2004, the compensation committee of the plaintiff's board of directors met informally in Geoffrey Ramsey's office. The compensation committee consisted of Geoffrey Ramsey, Eagan and John D'Antona. Eagan reviewed the agreements for Murphy, Geoffrey Ramsey and Anne Ramsey. He approved Murphy's and Geoffrey Ramsey's agreements but stated that he believed that Anne Ramsey's agreement was "very liberal" and "too rich," given her position. He further stated that he could not recommend it to the board and that he was "tabling" it. He did, however, convey to Geoffrey Ramsey and Anne Ramsey that Anne Ramsey's agreement would be revisited at a later date. The agreements for Geoffrey Ramsey and Murphy were reviewed and approved by the board on

March 30, 2004. Although the board was never presented with the agreements for either of the defendants, the defendants and Geoffrey Ramsey testified that they executed the agreements sometime in March, 2004, and that Geoffrey Ramsey had signed them on behalf of the plaintiff, as the defendants' agreements provided. After being executed, the defendants' agreements were placed in Geoffrey Ramsey's desk drawer. On August 30, 2005, the board of directors held a meeting, the result of which was the suspension of Geoffrey Ramsey's employment. He was also prohibited from entering the plaintiff's premises.

In early November, 2005, Debra Ramsey, at the request of Geoffrey Ramsey, entered his office in order to retrieve a computer disk from his desk. She discovered that the desk's contents, including her and Anne Ramsey's employment agreements, were missing.[2] When he learned that the agreements were missing, Geoffrey Ramsey suggested that they replace them by printing copies and signing them. The replacement agreements were signed on or about November 10, 2005. On November 9, 2005, after speaking with someone from the plaintiff's law firm, Murphy learned that the defendants had employment agreements. At some point, he asked Anne Ramsey about the agreements, and she confirmed that she and Debra Ramsey had existing employment agreements with the company. Following that conversation, Anne Ramsey presented Murphy with the replacement agreements. The plaintiff, thereafter, through its board, conducted an investigation into the validity of the employment agreements. On November 23, 2005, the defendants' employment was terminated.

[2] Murphy testified that he had moved the contents of Geoffrey Ramsey's desk to his home during the first week of September, 2005, and that after going through the materials, he did not discover the defendants' employment agreements.

In December, 2005, the defendants filed a claim for arbitration with the American Arbitration Association against the plaintiff, alleging breach of contract. In response, the plaintiff brought an action in the Superior Court seeking an injunction in order to prevent the matter from going to arbitration because, it alleged, it would be irreparably harmed if forced to arbitrate the defendants' claims in accordance with employment agreements to which it did not believe it was bound. Specifically, the plaintiff claimed that the employment agreements were entered into fraudulently and without the authority and or knowledge of the plaintiff's board of directors.[3] In addition, the plaintiff claimed that it had no adequate remedy at law. The defendants moved to dismiss the injunction action and argued that the arbitrator, not the court, should decide whether a valid arbitration agreement existed. The court denied the defendants' motion to dismiss and held that the court, not the arbitrator, should determine whether the employment agreements were valid. The court then held a hearing on the application for permanent injunction, which was subsequently denied. From that judgment, the plaintiff appeals.

"[T]he governing principles for our standard of review as it pertains to a trial court's discretion to grant or deny a request for an injunction [are]: A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand." (Internal quotation marks omitted.) *Kelo*

---

[3] The court did not reach the plaintiff's claim of fraud.

v. *New London*, 268 Conn. 1, 89, 843 A.2d 500 (2004), aff'd, 545 U.S. 469, 125 S. Ct. 2655, 162 L. Ed. 2d 439 (2005).

I

The plaintiff first claims that the court abused its discretion in denying its application for injunctive relief because the court's finding that the defendants proved the former existence, present unavailability and contents of the defendants' employment agreements through secondary evidence is clearly erroneous. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Barber* v. *Skip Barber Racing School, LLC*, 106 Conn. App. 59, 66, 940 A.2d 878 (2008).

In *Connecticut Bank & Trust Co.* v. *Wilcox*, 201 Conn. 570, 573, 518 A.2d 928 (1986), our Supreme Court set forth the quantum of proof required when secondary evidence is produced in lieu of the original document: "Such a party must demonstrate both (a) the former existence and the present unavailability of the missing document, and (b) the contents of the missing document." Id. Furthermore, the court concluded that application of these principles to the circumstances of a given case involves nothing more than the resolution of disputed questions of facts. Id., 575.

In the present case, the court found that the defendants met their twofold burden. In so determining, the court found that the defendants submitted into evidence an e-mail from the attorney who prepared the agreements, indicating that the agreements existed and were final, that Eagan testified as to having reviewed Anne Ramsey's agreement in March, 2004, and that both the defendants and Geoffrey Ramsey testified that they executed the agreements in March, 2004. In addition, the court heard testimony that the agreements were placed in Geoffrey Ramsey's desk and were there as of August 30, 2005, but that after Geoffrey Ramsey's employment was suspended and his desk cleaned out, the agreements could not be found. Furthermore, the plaintiff submitted to the court the employment agreements given to it by Anne Ramsey in November, 2005, and the defendants submitted an e-mail from their attorney that contained the "final" version of the agreements as prepared in March, 2004. Although there were slight differences between the e-mail and the replacement agreements, the court found that they were nearly identical, and the court was satisfied that the evidence was sufficient to show the content of the lost agreements.[4] On the basis of all the evidence before it, the court found that the defendants had met their burden to prove the former existence, present unavailability and contents of the original agreements. Because there was evidence before the court on which it could base its findings, the findings were not clearly erroneous.[5]

---

[4] The plaintiff argues that the court's finding that the secondary evidence was sufficient to prove the contents of the original agreements was clearly erroneous because the replacement agreements differed from the original agreements. The court heard testimony regarding the differences between the original agreements and the replacement agreements, credited that testimony and was satisfied that it was able to discern the contents of the original agreements from all the evidence that was presented to it. Because the court's finding is supported by the record, it was not clearly erroneous.

[5] The plaintiff also argues that the court improperly found that the agreements existed and were unavailable because it failed to find that the

## II

The plaintiff next claims that the court abused its discretion in denying its application for injunctive relief because the court's finding that Geoffrey Ramsey had apparent authority to bind the plaintiff to the terms of the defendants' employment agreements was clearly erroneous. We disagree.

"Apparent authority is that semblance of authority which a principal, through his own acts or inadvertences, causes or allows third persons to believe his agent possesses. . . . Consequently, apparent authority is to be determined, not by the agent's own acts,

defendants diligently searched for the missing agreements. We disagree. The court found that the defendants' employment agreements were placed in Geoffrey Ramsey's desk, that the employment agreements were in his desk as of the time he was suspended from his employment and prevented from returning to his office, that the agreements were not in the desk after Murphy removed its contents and that Murphy searched through the removed contents and could not find the employment agreements. To the extent that the plaintiff argues that the court did not explicitly characterize the search for the missing agreements as diligent, it should have filed a motion for articulation in accordance with Practice Book § 66-5. "[A]n articulation is appropriate where the trial court's decision contains some ambiguity or deficiency reasonably susceptible of clarification. . . . The purpose of an articulation is to dispel any . . . ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal." (Citations omitted; internal quotation marks omitted.) *Fantasia* v. *Milford Fastening Systems*, 86 Conn. App. 270, 283, 860 A.2d 779 (2004), cert. denied, 272 Conn. 919, 866 A.2d 1286 (2005).

In addition, the plaintiff argues that Anne Ramsey's failure to include her and Debra Ramsey's employment agreements in the company's filing in accordance with the Securities and Exchange Commission form 10-KSB was evidence that the employment agreements did not exist. The court, however, did not make such a finding. In contrast, the court found that Anne Ramsey did not include her and Debra Ramsey's agreements in the plaintiff's 10-KSB filing because their contracts involved less than $100,000 annually, and she reasonably believed that the disclosure requirements for the 10-KSB filing did not apply to employment agreements involving less than $100,000 annually. The court, as the finder of fact, was free to make this determination, and it is not for this court to retry the facts or pass on the credibility of witnesses. See *Reichenbach* v. *Kraska Enterprises, LLC*, 105 Conn. App. 461, 476, 938 A.2d 1238 (2008).

but by the acts of the agent's principal. . . . The issue of apparent authority is one of fact to be determined based on two criteria. . . . First, it must appear from the principal's conduct that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted [the agent] to act as having such authority. . . . Second, the party dealing with the agent must have, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority to bind the principal to the agent's action." (Internal quotation marks omitted.) *Machado* v. *Statewide Grievance Committee*, 93 Conn. App. 832, 838–39 n.8, 890 A.2d 622 (2006). Because "[i]t is well settled that [t]he nature and extent of an agent's authority is a question of fact for the trier"; (internal quotation marks omitted) id., 839; the court's determination that Geoffrey Ramsey had apparent authority to bind the plaintiff must stand if there is any evidence in the record to support it.

In its memorandum of decision, the court found that Geoffrey Ramsey was accustomed to signing employment agreements without prior or subsequent approval of the board, that the board had acquiesced in such conduct and that the defendants were familiar with those practices. On the basis of this course of dealing, the court determined that the defendants were justified in believing that Geoffrey Ramsey had authority to execute their agreements. In addition, the court found that an attorney from the plaintiff's law firm prepared the defendants' agreements, as well as Murphy's and Geoffrey Ramsey's agreements. In doing so, the attorney provided a signature line only for Geoffrey Ramsey on behalf of the company for the defendants' agreements, whereas the attorney provided a signature line requiring board approval for Geoffrey Ramsey's and Murphy's agreements. The court found that counsel's indication

that Geoffrey Ramsey had authority to sign the defendants' agreements without board approval provided further grounds for reliance by the defendants that Geoffrey Ramsey was authorized to execute their agreements. Furthermore, the court found that even though corporate presidency does not necessarily confer inherent authority to commit the corporation, corporation presidents are often "clothed with authority to enter into employment contracts," a fact that further supports the defendants' reasonable belief that Geoffrey Ramsey had the authority to act on behalf of the company. Moreover, the court found that there was nothing extraordinary or unusual about the agreements that would make it unreasonable for the defendants to believe that Geoffrey Ramsey had the authority to bind the plaintiff. As there was evidence in the record from which the court could conclude that Geoffrey Ramsey had signed employment agreements in the past, that the board had acquiesced in this behavior and that the defendants reasonably believed he had authority to sign their employment agreements, the court's finding that Geoffrey Ramsey had apparent authority to sign the agreements was not clearly erroneous.

## III

Last, the plaintiff claims that in denying its application for injunctive relief, the court improperly shifted the burden of proof to the plaintiff to establish a negative, that the employment agreements were *not* validly executed in March, 2004. In addition, the plaintiff claims that the court abused its discretion in denying the plaintiff's application for an injunction because the court failed to determine whether the agreements were executed and binding on the plaintiff.[6]

---

[6] Although we disagree and conclude that the court made this finding, we note that if the plaintiff believed that the court failed to make a finding necessary to the judgment, it had an obligation to file a motion for articulation in accordance with Practice Book § 66-5.

In an injunction action, "[t]he party seeking the injunction must prove his own case and adduce whatever proof is necessary to show the existence of the conditions or circumstances upon which he bases the right to and necessity for injunctive relief, and he must establish his right thereto by a preponderance of the evidence." 42 Am. Jur. 2d, Injunctions § 287 (1969). The overall burden, therefore, was on the plaintiff to prove by a preponderance of the evidence that it would be irreparably harmed. In determining whether the plaintiff had met its burden, the court had to make preliminary determinations, including whether the secondary evidence presented to the court was sufficient to establish the former existence, present unavailability and contents of the defendants' employment agreements and whether the agreements were executed validly in March, 2004. Contrary to the plaintiff's assertion, the burden was placed on the defendants to prove these preliminary matters.

In accordance with *Connecticut Bank & Trust Co.* v. *Wilcox*, supra, 201 Conn. 573, it was the defendants' burden to prove that the secondary evidence presented to the court was sufficient to establish the former existence, present unavailability and contents of the missing agreements. The court found that the defendants had met their burden and, in so finding, also found that the defendants and Geoffrey Ramsey had signed the agreements in March, 2004. After determining that the agreements existed and were signed by the defendants and Geoffrey Ramsey, the court next had to determine whether Geoffrey Ramsey had the authority to bind the plaintiff through his signature. The defendants presented evidence of Geoffrey Ramsey's apparent authority to bind the plaintiff, and the court credited the evidence. The court, therefore, contrary to the plaintiff's assertion, found that the agreements were executed in March, 2004, and binding on the plaintiff. Because the

plaintiff was bound by the defendants' agreements, and because the agreements contained an arbitration clause, the court ultimately concluded that the plaintiff had failed to meet its burden to prove it would be irreparably harmed if forced to arbitrate the defendants' claims. Having already concluded that the court's findings are not clearly erroneous, we ultimately conclude that the court did not abuse its discretion in determining that because the plaintiff was bound to the defendants' agreements, it would not be irreparably harmed from arbitrating the defendants' claims.

The judgment is affirmed.

In this opinion the other judges concurred.