MIDDLESEX MUTUAL ASSURANCE COMPANY *v.*
MARGUERITE A. KOMONDY
(AC 29665)

Beach, Robinson and McDonald, Js.

Argued April 15, 2009—officially released March 30, 2010

*Robert T. Rimmer,* for the appellant (defendant).

*Heather J. Adams-Beman,* for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Marguerite A. Komondy, appeals from the judgment of the trial court granting the application to confirm an arbitration award filed by the plaintiff, Middlesex Mutual Assurance Company, and denying her motion to vacate the award. The defendant claims that the court improperly (1) confirmed the award and denied her motion to vacate and (2) failed to issue an order specifying the manner of payment of the award. We reverse in part the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. The defendant owned a home in Chester. She purchased the home before she married Christopher Komondy and has been at all relevant times the sole owner of the property. The defendant was

insured against loss to her home pursuant to a "restorationist" policy (policy) issued by the plaintiff. The policy provides coverage that includes payment of the amount necessary to restore a home to its original state after a fire or other loss.

On March 5, 2005, while the policy was in effect, the defendant's home was destroyed in a fire. The defendant and the plaintiff were unable to agree on an estimate of an amount necessary to restore the property, and the plaintiff demanded arbitration to resolve the dispute. Following a provision in the policy, the parties submitted the dispute to arbitration by appraisers. The submission directed the arbitrators to determine the actual cash value and the replacement cost of the property.[1] Each party appointed an appraiser to act on its own behalf, and the appraisers in turn selected an umpire for the arbitration.

Arbitration proceeded. A total award in the amount of $1,794,919.76 for "replacement cost damage" was signed by the two appraisers and the umpire on August 1, 2007.[2] David C. Jones, the appraiser appointed by the defendant, sent a letter providing notice of the award to the defendant's address. The letter was dated August 9, 2007, and was mailed on August 14, 2007. The envelope containing the letter was addressed only to Christopher Komondy; the salutation of the letter itself was to

---

[1] The submission specifically directed the appraisers to determine the following: (1) the actual cash value of the property before the fire, (2) the actual cash value of the loss caused by the fire, (3) the replacement cost prior to the fire, (4) the replacement cost of the damaged property and (5) the period of time required for restoration. The submission further provided: "It is expressly understood and agreed that the *sole purpose* of this agreement and the appraisal herein provided for is to ascertain and fix the aforesaid amounts . . . and said appraisal shall not determine, waive or in otherwise affect any question of liability to first party or any right of any subscriber of this agreement except to fix the [aforesaid] amounts . . . ." (Emphasis added.)

[2] The award also included the amount of $475,000 for "sound value," which was defined in the submission as actual cash value. At oral argument it was agreed that the actual cash value has been paid.

"Chris and Marguerite." Jones also faxed a copy of the award to Christopher Komondy on August 14, 2007. The cover sheet of the fax was directed to "Chris." The defendant testified that she recognized the letter as a document that Christopher Komondy had received from Jones.

The plaintiff filed an application for confirmation of the award on August 27, 2007. On October 10, 2007, the defendant objected to the application and moved to vacate the award. On February 19, 2008, the court confirmed the award and denied the defendant's motion to vacate as untimely because it was not filed within thirty days of notice of the reward, as required by General Statutes § 52-420 (b).[3] The court concluded that the defendant "received actual notice via her husband [Christopher Komondy]," and "[t]here is no dispute that [Christopher] Komondy was serving *de facto*, as [the defendant's] agent and representative in the discussions and negotiations with [the plaintiff]." (Emphasis in original.) This appeal followed.

I

We first address the defendant's claim that the court improperly confirmed the arbitration award and denied her motion to vacate, in which she claimed that she never properly received written notice of the award. We disagree with her claim.

Unless a provision in the arbitration agreement provides otherwise, General Statutes § 52-416 requires that notice of an arbitration award be given to parties within thirty days from the date the hearing or hearings are completed. *Hayes* v. *Travelers Indemnity Co.*, 26 Conn. App. 418, 421, 601 A.2d 555 (1992). Section 52-416 (b) specifically states that "[w]ritten notice of the award

---

[3] General Statutes § 52-420 (b) provides: "No motion to vacate, modify or correct an award may be made after thirty days from the notice of the award to the party to the arbitration who makes the motion."

shall be given to each party." The statute does not specify the manner in which notice must be given to the parties.[4] The arbitration hearings were completed on August 1, 2007. The letter and the fax were sent by Jones on August 14, 2007, within the prescribed period.

The defendant, however, argues that there is no evidence in the record that anyone gave written notice of the award to her *personally*. This argument is based on the facts that the defendant at all times relevant was the sole owner of the property, and both the fax and the envelope containing the letter were addressed to Christopher Komondy. We disagree with the defendant because Christopher Komondy possessed apparent authority[5] to receive the written notice on the defendant's behalf.

We begin with the applicable standard of review. Whether Christopher Komondy had apparent authority to accept notice on behalf of the defendant is an issue of fact that we review under the clearly erroneous standard. See *Host America Corp.* v. *Ramsey*, 107 Conn. App. 849, 858, 947 A.2d 957 ("[t]he issue of apparent authority is one of fact" [internal quotation marks omitted]), cert. denied, 289 Conn. 904, 957 A.2d 870 (2008); *Union Trust Co.* v. *McKeon*, 76 Conn. 508, 514, 57 A.

---

[4] This court recently stated that "[t]he concept of notice concerns notions of fundamental fairness, affording parties the opportunity to be apprised when their interests are implicated in a given matter. . . . Notice is not a rigid concept. Section 2 of the Restatement (Second) of Judgments, entitled Adequate Notice . . . explains that [t]he modern approach to notice-giving attaches primary importance to actual notice and treats technical compliance with notice procedures as a secondary consideration." (Citations omitted; internal quotation marks omitted.) *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 622–23, 902 A.2d 24 (2006).

[5] We construe the court's finding that Christopher Komondy was "serving *de facto*"; (emphasis in original); as the defendant's agent as a finding of apparent authority on the part of Christopher Komondy.

109 (1904) ("the existence of an apparent agency is essentially a question of fact"). The clearly erroneous standard of review provides that "[a] court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, 279 Conn. 830, 858, 905 A.2d 70 (2006). Because the defendant does not claim that the notice given to Christopher Komondy was defective, we must determine only whether the court's finding that Christopher Komondy had apparent authority was clearly erroneous.

"Apparent authority must be derived not from the acts of the agent but from the acts of his principal. [T]he acts of the principal must be such that (1) the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority, and (2) in consequence thereof the person dealing with the agent, acting in good faith, reasonably believed, under all the circumstances, that the agent had the necessary authority." (Internal quotation marks omitted.) *Hallas* v. *Boehmke & Dobosz, Inc.*, 239 Conn. 658, 674, 686 A.2d 491 (1997).

"[A] course of conduct . . . may give rise to the apparent authority of one spouse to act on behalf of the other. . . . [A spouse] habitually permitted by [the other spouse] to attend to some of [his or her] business matters may be found to have authority to transact all of [his or her] business affairs. . . . An act routinely performed by one spouse for the other may give rise to apparent authority for that spouse to perform the same or a closely related act." (Internal quotation marks omitted.) *Lopez* v. *United States*, 201 F.3d 478, 482 (D.C. Cir. 2000), quoting 1 Restatement (Second), Agency

§ 22, comment (b) (1958); see also *Cyclone Fence Co.*
v. *McAviney*, 121 Conn. 656, 659, 186 A. 635 (1936).

The defendant and Christopher Komondy were mar-
ried and lived together. These facts alone do not create
apparent authority for him to accept written notice of
the award on behalf of the defendant. See *Cyclone Fence
Co.* v. *McAviney*, supra, 121 Conn. 659. The following
additional facts, however, support the court's conclu-
sion that he was acting as the defendant's agent with
regard to the various communications between those
involved in the arbitration process. At trial, the defen-
dant testified that Christopher Komondy was the one
who was actively communicating with Jones and repre-
sentatives of the plaintiff regarding the arbitration pro-
cess. She testified that "[e]verybody seemed to be
sending all communications to [Christopher
Komondy]." The defendant further testified that she
never notified anyone involved in the arbitration pro-
cess that they should be speaking to her instead of
Christopher Komondy. Christopher Komondy testified
at trial that he personally made telephone calls to and
received them from Jones and William M. Zimmer, a
claims representative of the plaintiff, on multiple occa-
sions. He also testified that he corresponded via mail
on multiple occasions with Jones and Zimmer. Zimmer
testified that he dealt primarily with Christopher
Komondy and not the defendant. Both the envelope
containing the letter and the fax from Jones were
addressed to Christopher Komondy. Jones testified that
by sending the letter and the fax, he believed that he
was providing written notice of the award to "the
Komondys."

The court reasonably could have found that the defen-
dant knowingly permitted Christopher Komondy to act
as though he possessed authority to receive communi-

cations between the parties to the arbitration, including the written notice of the award, on her behalf. Moreover, the court reasonably could have found that Jones believed that Christopher Komondy had authority to receive notice of the award. These conclusions are supported by the testimony that Christopher Komondy handled all of the communications and that the defendant never informed anyone that she should be the point of contact instead of Christopher Komondy. We conclude that the court's finding that Christopher Komondy had apparent authority to accept written notice on behalf of the defendant was not clearly erroneous. Because the defendant's agent received the fax on August 14, 2007, and presumably received the letter shortly thereafter, the defendant's motion to vacate the award filed on October 10, 2007, properly was denied as untimely pursuant to § 52-420, and the application to confirm properly was granted.[6]

II

The defendant further argues that the court, having confirmed the award, improperly failed to specify the manner of its payment as required by General Statutes § 52-421 (b)[7]. Specifically, the defendant argues that the court improperly failed to require that the award be paid in a lump sum within sixty days as required by

[6] The court's conclusion is reinforced by the uncontested finding that the defendant had actual notice of the award.

[7] General Statutes § 52-421 (b) provides: "The judgment or decree confirming, modifying or correcting an award shall be docketed as if it were rendered in a civil action. The judgment or decree so entered shall have the same force and effect in all respects as, and be subject to all the provisions of law relating to, a judgment or decree in a civil action; and it may be enforced as if it had been rendered in a civil action in the court in which it is entered. When the award requires the performance of any other act than the payment of money, the court or judge entering the judgment or decree may direct the enforcement thereof in the manner provided by law for the enforcement of equitable decrees."

General Statutes § 38a-307[8] and subsection 10 of § I of the policy.[9] We disagree.

"Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Pritchard* v. *Pritchard*, 103 Conn. App. 276, 283, 928 A.2d 566 (2007).

We first note that neither § 38a-307 nor subsection 10 of § I of the policy is controlling. Both concern standard fire insurance policies, by the terms of which the

[8] General Statutes § 38a-307 sets forth the standard form of a fire insurance policy in Connecticut and provides in relevant part: "When loss payable. The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided. . . ."

[9] Subsection 10 of § I of the policy provides: "Loss payment. We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and: [a] reach an agreement with you; [b] there is an entry of a final judgment; or [c] there is a filing of an appraisal award with us."

company agrees to pay actual cash value. Section 38a-307 sets forth the standard form fire insurance policy, which provides coverage to an insured for loss to property "to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss . . . ." General Statutes § 38a-313 provides: "Nothing contained in section 38a-307 shall be construed to preclude insurance indemnifying the insured against the amount actually expended, in excess of actual cash value at the time any loss or damage occurs, to repair, rebuild or replace the insured property." Section 38a-307 does not apply to "restorationist" policies such as the one at issue in the present case because it expressly governs only coverage for actual cash value, not coverage for replacement cost. This distinction is made more clear by § 38a-313.

Moreover, in context, the specific policy provision cited by the defendant regarding payment within sixty days, subsection 10 of § I, applies to actual cash value, not replacement cost. In context, subsection 3 (a) (2) of § I specifically refers to the timing of payment for replacement cost: "We will pay no more than the actual cash value of the damage until actual repair, restoration or replacement is complete. Once actual repair, restoration or replacement is complete, we will settle the loss . . . ." Subsection 3, rather than subsection 10, applies specifically to the defendant's replacement costs and does not direct payment to be made within sixty days.[10]

In any event, the court declined to issue an order specifying the manner of payment on the ground that § 52-421 (b) permits a court to direct the manner of

---

[10] At oral argument, the plaintiff stated that the defendant has been paid the amount of actual cash value, and the statement was not contradicted. No issue has been raised regarding the timeliness of that payment.

enforcement of an award only when the award requires the performance of any act other than the payment of money. It concluded that "[b]ecause the award in this case is exclusively monetary, the court does not believe it has the authority to direct that the award be disbursed . . . as requested by the defendant." The court further concluded that it was limited to confirming the award by our decision in *Amalgamated Transit Union Local 1588* v. *Laidlaw Transit, Inc.*, 33 Conn. App. 1, 632 A.2d 713 (1993). In that case, this court held that General Statutes § 52-417 "contains no provision for finding facts or resolving additional disputes." Id., 5. Section 52-417 provides that in ruling on an application to confirm an arbitration award "[t]he court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418[11] and 52-419."[12] In the present case, the court concluded that it was limited to either confirming, modifying or vacating the award and was without authority to issue an order specifying the manner of its payment.

[11] General Statutes § 52-418 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[12] General Statutes § 52-419 (a) provides in relevant part: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides . . . shall make an order modifying or correcting the award if it finds any of the following defects: (1) If there has been an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon

We agree with the court and conclude that in these circumstances the court was without authority to issue an order specifying the manner of payment within the context of the application to confirm this award. There is no requirement in § 52-421 (b) that the court, in confirming an award, specify the manner of payment. Moreover, § 52-417 "sets forth the authority of the trial court in ruling on an application to confirm an arbitration award." *Amalgamated Transit Union Local 1588* v. *Laidlaw Transit, Inc.*, supra, 33 Conn. App. 5. "The trial court lacks any discretion in confirming the arbitration award unless the award suffers from any of the defects described in . . . §§ 52-418 and 52-419." Id., 4. In *Amalgamated Transit Union Local 1588*, we stated that, absent a motion to vacate, modify or correct filed within the thirty day time limit specified in § 52-420, § 52-417 requires the court to confirm the award and "contains no provision for finding facts or *resolving additional issues*." (Emphasis added.) Id., 4–5. As we stated in part I of this opinion, the defendant failed to file a timely motion to vacate the award. Thus, the court was limited to confirming or not confirming the award and was without authority to resolve additional issues such as specifying the manner of payment.

Furthermore, arbitrators are limited to deciding the issues included in the submission. See General Statutes § 52-419 (a); see also *Exley* v. *Connecticut Yankee Greyhound Racing, Inc.*, 59 Conn. App. 224, 228–29, 755 A.2d 990, cert. denied, 254 Conn. 939, 761 A.2d 760 (2000). The submission in this case requested resolution only of the appropriate numeric values and the time in which the restoration was to be completed.[13] The award addressed only those values, and the court's resulting

---

the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."

[13] See footnote 1 of this opinion. The method or timing of payment was not otherwise addressed.

judgment confirmed only those values. Any issue of manner of payment was appropriately not addressed in the ruling confirming the award.[14]

Finally, the award of the arbitrators, dated August 1, 2007, provided that the "period of restoration shall not

[14] See footnote 7 of this opinion. Such an enforcement action is complementary to § 52-421 (b) but is conceptually distinct from the action of the court in confirming an award. Section 52-421 (b) concerns enforcement of the judgment resulting from the confirmation. The court may enforce the resulting judgment as any civil judgment, and, if the judgment is equitable in nature, the court may issue enforcement orders accordingly.

The dissent suggests that by virtue of § 52-421 (b) the court had the statutory power to order the time of payments and, thus, could have ordered that progress payments be made during the course of construction. The dissent finds such authority in the following statutory language: "[w]hen the award requires the performance of any other act than the payment of money, the court or judge entering the judgment or decree may direct the enforcement thereof in the manner provided by law for the enforcement of equitable decrees." General Statutes § 52-421 (b).

First, the defendant never asked this court to remand the case for the purpose of compelling progress payments, after execution of a valid construction contract or otherwise; rather, the defendant in her brief sought as relief an order that the full amount of the restoration award be paid within sixty days. Second, once the award is confirmed, the court, as noted previously, does not have the authority to add terms to the award. On its face, § 52-421 provides for the enforcement of the judgment resulting from the confirmation. If a resulting judgment is equitable, such as an order requiring an employer to reinstate an employee, then the order is enforceable through the usual means, such as contempt. It is difficult to see how a judgment establishing the restoration value and the time period in which the restoration may occur is equitable.

*Northrup* v. *Allstate Ins. Co.*, 247 Conn. 242, 720 A.2d 879 (1998), mentioned by the dissent, arises in a different context and addresses a different issue. *Northrup* did not arise out of arbitration; rather, it was an original action alleging breach of contract. It had nothing to do with the powers and duties of the court regarding enforcement of arbitration awards. *Northrup* did hold that the phrase in a restoration policy "the amount actually and necessarily spent" on restoration includes amounts validly incurred as debts, even if not actually paid. Id., 249–52. The insured, therefore, was contractually entitled to progress payments after the insured entered into a valid contract with a contractor and did not actually have to spend the entire amount before he was entitled to any payment from the company. It should be noted that this is generally the arrangement that the lawyer for the plaintiff in this case indicated was the usual practice. If in this case the defendant had brought an independent action addressing the manner of payment, and especially had the defendant entered into a valid

exceed February 1, 2009." During the pendency of this appeal, the time period expired. In these circumstances, the case is remanded to the trial court for further proceedings in order to set a new date.

The judgment is reversed only as to the restoration date and the case is remanded for further proceedings consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion ROBINSON, J., concurred.

MCDONALD, J., concurring in part and dissenting in part. I agree with part I of the majority opinion. I also agree with the portion of part II of the majority opinion that reverses the restoration date award and remands the matter to the trial court to set a new date.

I disagree as to part II of the majority opinion that sustains the court's decision not to direct progress payments while enforcing the award. I would hold that, contrary to the majority's reading of General Statutes § 52-421, the court had the authority to direct progress payments during the restoration period, so that the defendant, Marguerite A. Komondy, could have completed the restoration within the restoration period.

Section 52-421 (b) provides in relevant part: "When the [arbitration] award requires the performance of any other act than the payment of money, the court . . . may direct the enforcement thereof in the manner provided by law for the enforcement of equitable decrees." The court read § 52-421 as limiting the authority of the court to enter an order for progress payments. The award for restoration in this case was in the form of a dollar amount that also specified that the period of

contract with a contractor for reconstruction, this argument might have more persuasive force.

restoration was to end on February 1, 2009. The restoration period was, therefore, part of the judgment and required the defendant, Komondy, to do the restoration work, an act other than the payment of money, by February 1, 2009.

Our Supreme Court in *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 505, 610 A.2d 1212 (1992), however, stated that it did not read § 52-421 as limiting the jurisdiction of the court over arbitrated contract disputes. The Supreme Court explained that the arbitration statutes do not create the jurisdiction of the Superior Court but, rather, validate it. The Supreme Court held that the court's power is inherent in the judicial power conferred on the court by article five, § 1, of the constitution of Connecticut. Reading § 52-421 in this light, I would conclude that the Superior Court had the authority or power to direct progress payments during the restoration period as the court had the power to direct the manner in which restoration would proceed, by ordering payments during the restoration period. Although, I agree with the observation in footnote 14 of the majority opinion that an insured would be entitled to progress payments after the insured entered into a valid construction contract. I would also conclude that expeditious progress payments are required to ensure that the restoration date is met. A condition providing that the plaintiff make expeditious progress payments would ensure that the defendant would not be required to finance the restoration before receiving any indemnity from the plaintiff.

Our Supreme Court in *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 249–51, 720 A.2d 879 (1998), commented on the argument by the defendant in that case that the insured be required to pay out the money for repair or replacement, rather than to incur a valid debt for the completed repairs before any payment was required of the defendant. In *Northrop*, our Supreme Court stated

that "it would defy the reasonable expectations of the insured, and in many cases place undue burdens on him, to require the insured to finance the withheld depreciation portion of the repair or replacement of a fire loss in order to secure the replacement cost coverage from which an additional premium had been paid." Id., 251. Applying *Northrop,* it is unreasonable in this case to expect that a lender would finance a restoration cost of more than $1 million over the fair market value of the defendant's home.

Moreover, following the court's confirmation of the arbitration award, the defendant filed a motion for articulation as to satisfaction of the award. This issue had not been addressed in the court's decision confirming the arbitration award. When the issue of payments had been argued before the court, the plaintiff took the position that the award would be paid incrementally as restoration construction progressed.[1] The defendant's husband testified that he would be satisfied by progress payments but complained that it was after a long fight and an arbitrator's award that architectural fees were paid. The court, however, concluded that it did not have the authority to order such payments. The court stated that it did not have the authority and, as a result, "decline[ed] to order that the arbitrator's award be disbursed as progress payments."

During oral argument before us, when the issue of the defendant's ability to do the restoration work was raised, counsel for the plaintiff stated that the plaintiff "typically" would pay the defendant's restoration expense when the defendant made an agreement binding herself to restoration. We should therefore remand this case for the trial court to consider requiring the

---

[1] The court asked if the plaintiff would put its commitment to make progress payments in writing as a matter of fairness, and counsel for the plaintiff did not object. The court stated its purpose was to avoid a "catch-22" situation.

typical, as stated by the plaintiff, and expeditious release of restoration funds so that the defendant could find it possible to enter into a contract for the reconstruction of her home contingent on such payments by the plaintiff. Otherwise, as our Supreme Court stated in *Northrop*, the failure to pay for the restoration work until it is completed and paid for by the defendant would render the restoration coverage "largely illusory." *Northrop* v. *Allstate Ins. Co.*, supra, 247 Conn. 251.

Accordingly, I concur with the decision to remand the matter to the trial court to set a new restoration date. I respectfully dissent, however, regarding the decision that the court not direct progress payments. I would remand the matter to the trial court to implement the defendant's restoration by making definite the plaintiff's agreement to make progress payments and to do so promptly.