# JEFF DZIEDZIC *v.* PINE ISLAND MARINA, LLC
## (AC 34462)

Gruendel, Beach and Alvord, Js.

Argued April 15—officially released June 25, 2013

*Thomas J. Weihing*, with whom, on the brief, was *Dana P. Lonergan*, for the appellant (defendant).

*James Colin Mulholland*, for the appellee (plaintiff).

### Opinion

GRUENDEL, J. This breach of contract action involves a defendant that received notice of the proceedings but elected not to appear, leading to a default judgment in favor of the plaintiff, Jeff Dziedzic. The defendant, Pine Island Marina, LLC, now appeals from the judgment of the trial court denying its motion to open that judgment. We affirm the judgment of the trial court.

As our Supreme Court has explained, the entry of a default judgment conclusively establishes the facts alleged in the plaintiff's complaint. *Smith* v. *Snyder*, 267 Conn. 456, 468, 839 A.2d 589 (2004). The plaintiff's complaint sets forth the following relevant facts. At all relevant times, the defendant operated a commercial marina business (marina) in Groton. On June 12, 2008, the parties executed an employment contract (contract)

pertaining to the plaintiff's work as general manager of the marina.[1] The contract term commenced on May 9, 2008, and concluded on May 9, 2013.

The contract contained a number of provisions related to the potential sale of the marina. It provided the defendant with the option to terminate the contract without cause on thirty days written notice of such a sale. It further provided that, in the event that the defendant terminated the contract due to the sale of the marina during the third year of the contract, the defendant would be obligated to pay the plaintiff $75,000. On December 22, 2010, the defendant furnished written notice to the plaintiff that it was exercising its option to terminate the contract due to the upcoming sale of the marina. On or about January 7, 2011, the defendant sold the marina to BLP Enterprises, Inc., for approximately $3.8 million.

Despite repeated demands made by the plaintiff, the defendant refused to comply with its contractual obligation to pay him $75,000. The defendant also refused to provide the plaintiff with notice of any reasons or causes upon which it relied to justify its withholding of that payment. The defendant's refusal to tender that payment deprived the plaintiff of a substantial benefit that he reasonably expected to receive under the express terms of the contract, which constituted a material breach thereof. The defendant's refusal to comply with its contractual obligations was prompted by "dishonest purpose, moral obliquity, furtive design, ill-will, reckless indifference to [the plaintiff's] rights under the contract and an intentional and wanton violation of [his] contract rights" and it caused "emotional distress to [the plaintiff], including undue stress, humiliation, anger, anxiety, fear, frustration, embarrassment, loss

---

[1] A copy of the contract was admitted into evidence at the July 6, 2011 hearing in damages.

of sleep, loss of appetite and a strain to [the] plaintiff's marital relationship."

As a result, the plaintiff commenced the present action on January 21, 2011, by filing an application for a prejudgment remedy that named "Stewart Title Guaranty Company dba Stewart Title Company" (Stewart) as a third person holding property of the defendant. As the court found in its memorandum of decision, service of process was made on the agent authorized to accept service on behalf of the defendant. A hearing was scheduled on the matter for February 22, 2011, at which the defendant did not appear. The court subsequently ordered in relevant part that "the plaintiff may attach and garnish up to the value of $90,000 the following goods or estate of [the defendant] . . . any and all payments or disbursements that are due to be paid to . . . [the defendant] or to any of its members, former members, successors or assigns as their interests may appear from [Stewart] . . . under a certain $300,000 escrow fund being held in trust by [Stewart] pursuant to a certain escrow agreement made between [the defendant], Pine Island Real Estate, LLC and [Stewart]." The court attached and "incorporated herein by reference" a signed copy of that escrow agreement to its order. Approximately ten days after the plaintiff filed its application for the prejudgment remedy, the defendant filed articles of dissolution with the office of the Connecticut Secretary of the State.

In April, 2011, the plaintiff served a signed writ, summons and complaint on the registered agent for service of process of the defendant. The complaint consisted of four counts. The first count alleged breach of contract and sought an award of $75,000 in monetary damages "that would place [him] in the same position as that which he would have been in had the defendant fully performed its . . . express contract obligation . . . ." Count two alleged breach of an implied covenant

of good faith and fair dealing and count three alleged negligent infliction of emotional distress. In count four, the plaintiff alleged that the defendant's breach of contract "was so unfair and offensive as to constitute a violation of [the Connecticut Unfair Trade Practices Act, General Statutes] § 42-110b et seq. [CUTPA]." Accordingly, the plaintiff, "on account of such unfair or deceptive trade practice," sought an additional award of "all costs of litigation and an award of punitive or exemplary damages—to the extent of [the defendant's] undistributed assets, as allowed . . . ."

When the defendant did not appear or otherwise respond to that pleading, the plaintiff filed a motion for default, which was granted by order dated May 17, 2011. Notice of that order was provided to the defendant on that date. The matter proceeded to a hearing in damages on July 6, 2011, at which the defendant did not appear. The plaintiff testified at that hearing that he had worked at the marina for twelve years and that his employment contract provided that he would receive a payment of $75,000 in the event that the marina was sold during the third year of the contract, as ultimately transpired. The plaintiff testified that he helped facilitate the sale of the marina on behalf of the defendant. He explained that he was required to maintain and operate the marina on a regular basis and that he "was in full management mode including ensuring that the marina was in turnkey operation for the owners at the time period of closing. It was necessary to sell slips, sell winter storage, and take care of all the operations that would normally happen if the marina wasn't being sold in order to uphold the value of that marina through to closing." The plaintiff also testified that he worked specifically with the defendant's attorney, Keith Varian of the firm of Murtha Cullina, on a regular basis in preparing "to make the marina [sale] close." Following the sale of

the marina, the plaintiff made repeated inquiries regarding his payment under the contract, but the defendant never responded. When the hearing concluded on July 6, 2011, the court entered an order rendering judgment "against [the] defendant in the amount of $150,000 together with attorney's fees of $2161.50 and costs of $377.12 together with prejudgment and post-judgment interest."[2] On July 12, 2011, the plaintiff provided notice of that judgment to the defendant in accordance with Practice Book 17-22.[3]

Almost four months later on November 9, 2011, the defendant filed a motion to open the judgment.[4] That motion alleged in relevant part that "[t]he defendant was ill advised that it should take no action in this case on the basis that no judgment could be rendered against it because of the dissolution. This was obviously error and is why the defendant failed to file an appearance." The motion then proceeded to set forth "a number of good faith defenses" that allegedly existed.

Accompanying the defendant's motion was a document entitled "Affidavit in Support of Motion to Open

---

[2] By order dated March 13, 2012, the court clarified that "[p]rejudgment interest is awarded at the rate of 10 [percent] from January 7, 2011 to the date of judgment. [P]ost judgment interest is awarded from July 6, 2011, at the rate of 4 [percent]."

In addition, we note that counsel for the defendant, at the conclusion of oral argument, represented to this court that the present case was not one in which the plaintiff "would never get paid. . . . Money is in escrow, this man in all probability if he is due any money, even with the dissolved LLC, will get paid. . . . He has an ability to get paid."

[3] Practice Book (2011) § 17-22 provides in relevant part: "A notice of every nonsuit for failure to enter an appearance or judgment after default for failure to enter an appearance, which notice includes the terms of the judgment, shall be mailed within ten days of the entry of judgment by counsel of the prevailing party against whom it is directed and a copy of such notice shall be sent to the clerk's office. . . ."

[4] The motion to open was signed on behalf of the defendant by Attorney Christopher T. Richtarich of the firm of Daly, Weihing & Bochanis, which firm represents the defendant in this appeal.

Judgment Upon Default." That document identifies Kam H. Wong as "a member of the now dissolved [defendant]." It states, inter alia, that "Daly, Weihing and Bochanis now represent the [defendant] in the above captioned matter." It continues: "I was informed that due to the dissolution of the [defendant] not to take action in the above referenced matter and upon that advice failed to file an appearance. . . ." The document does not identify the party that allegedly provided that advice or whether said party was an attorney licensed to practice law in this state.[5] The document was signed by Wong on behalf of the defendant. It was not authenticated in any manner as a sworn attestation.[6]

On December 1, 2011, the court denied the motion to open. In so doing, the court concluded that the defendant had failed to demonstrate reasonable cause for its failure to appear and to defend the underlying action. From that judgment, the defendant appealed to this court.[7]

At the outset, we note that although the defendant's brief asserts four distinct claims, the only ones properly

[5] Whether the defendant may seek recourse against that unidentified party is not an issue in this appeal.

[6] Prior to the hearing on the defendant's motion but more than four months after the default judgment was rendered, the defendant filed an amended affidavit that was authenticated. The court considered that affidavit in deciding the defendant's motion. See *Carter* v. *D'Urso*, 5 Conn. App. 230, 234, 497 A.2d 1012, cert. denied, 197 Conn. 814, 499 A.2d 63 (1985).

[7] After commencing this appeal, the defendant filed a motion for articulation with the trial court requesting an articulation of "the basis for the $150,000 damages award when the claim for damages was $75,000." The court granted that motion. Its July 5, 2012 articulation states in relevant part that "[t]he first count of the [plaintiff's complaint] alleges the essential elements of breach of contract setting forth damages in the amount of $75,000. . . . Paragraph [fourteen] of the fourth count claims that the defendant's breach of contract was 'so unfair and offensive as to constitute a [CUTPA] violation . . . .' Based upon the admitted allegations of the second and third counts, it is concluded that the breach of contract was so unfair and offensive as to constitute a [CUTPA] violation . . . . Accordingly, punitive damages and equitable relief were awarded under the provisions of [General Statutes] § 42-110g."

before us are whether the court improperly denied (1) the defendant's motion to open the judgment and (2) the defendant's request to permit Wong to testify at the hearing on that motion. As we previously have explained, "[i]t is well established in our jurisprudence that [w]here an appeal has been taken from the denial of a motion to open, but the appeal period has run with respect to the underlying judgment, we have refused to entertain issues relating to the merits of the underlying case and have limited our consideration to whether the denial of the motion to open was proper. . . . When a motion to open is filed more than twenty days after the judgment, the appeal from the denial of that motion can test only whether the trial court abused its discretion in failing to open the judgment and not the propriety of the merits of the underlying judgment. . . . This is so because otherwise the same issues that could have been resolved if timely raised would nevertheless be resolved, which would, in effect, extend the time to appeal." (Internal quotation marks omitted.) *Langewisch* v. *New England Residential Services, Inc.*, 113 Conn. App. 290, 293, 966 A.2d 318 (2009). The defendant's failure to file its motion to open within twenty days of the notice of judgment precludes review of its other two claims in this appeal.[8]

I

The defendant argues that the court abused its discretion in denying its motion to open. "A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion. . . . In determining

---

[8] The defendant claims that the court, in rendering the default judgment in favor of the plaintiff, improperly awarded double damages pursuant to CUTPA and failed to consider whether the contract required the submission of disputes to binding arbitration. Because those claims pertain to the merits of the underlying judgment, they are not properly before us in this appeal.

whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Citations omitted; internal quotation marks omitted.) *Walton* v. *New Hartford*, 223 Conn. 155, 169–70, 612 A.2d 1153 (1992).

The power of the court to set aside a default judgment is governed by General Statutes § 52-212. To obtain relief, "the movant must make a two part showing that (1) a good defense existed at the time an adverse judgment was rendered; and (2) the defense was not at that time raised by reason of mistake, accident or other reasonable cause. . . . [B]ecause the movant must satisfy both prongs of this analysis, failure to meet either prong is fatal to its motion." (Internal quotation marks omitted.) *Little* v. *Mackeyboy Auto, LLC*, 142 Conn. App. 14, 18–19, 62 A.3d 1164 (2013). The court in the present case concluded that the defendant did not satisfy the latter requirement.

More specifically, the court found, and the defendant does not dispute, that it received notice of the proceedings in this case and made a conscious decision to ignore them. The court predicated that finding in part on Wong's affidavit, in which Wong averred that he "was informed that due to the dissolution of the [defendant] not to take action in the above referenced matter and upon that advice failed to file an appearance." (Internal quotation marks omitted.) As a result, the court, in denying the motion to open, found that "[t]here is no claim that [the defendant] was unaware of its legal rights to assert a claim or demand for arbitration or that [the] complaint sought relief based upon the [contract] as well as a theory of tort recovery. The affidavit in this case indicates that there was no mistake in this conduct, but rather there was a conscious decision to ignore the legal process in its entirety. The fact that

the defendant chose to ignore this process, and now rues this decision, is not a basis to open up the judgment. . . . The defendant has not met its burden to show reasonable cause for its failure to appear and to defend the underlying action." (Citation omitted.) We concur with that assessment.

"It is this court's well settled jurisprudence that [a] court should not open a default judgment in cases where the defendants admit they received actual notice and simply chose to ignore the court's authority. . . . Negligence is no ground for vacating a judgment, and it has been consistently held that the denial of a motion to open a default judgment should not be held an abuse of discretion where the failure to assert a defense was the result of negligence. . . . Negligence of a party or [its] counsel is insufficient for purposes of § 52-212 to set aside a default judgment." (Internal quotation marks omitted.) *Giano* v. *Salvatore*, 136 Conn. App. 834, 843, 46 A.3d 996, cert. denied, 307 Conn. 926, 55 A.3d 567 (2012); see *Postemski* v. *Landon*, 9 Conn. App. 320, 325, 518 A.2d 674 (1986) ("[w]hile mistake, accident or other reasonable cause may be a sufficient reason to open a default judgment, negligence is not"). To the extent that Wong's affidavit avers that an unidentified party rendered legal advice that "was obviously error," as the defendant claims in its motion to open, it remains that such negligence cannot establish the requisite reasonable cause to open a judgment under § 52-212. Accordingly, the court did not abuse its discretion in denying the motion to open.

II

The defendant also claims that the court improperly denied its request to permit Wong to testify at the hearing on the motion to open. It does not identify any applicable standard of review for that claim, as required by our rules of practice. See Practice Book § 67-4 (d).

The defendant further has provided this court with no authority indicating that a trial court confronted with a motion to open a default judgment that is accompanied by an affidavit is obligated, as a matter of law, to permit the movant to also introduce live testimony in support thereof.

Those deficiencies, while significant, nevertheless are not the only barriers to our review of the defendant's conclusory assertion. A review of the transcript of the November 21, 2011 hearing on the defendant's motion to open indicates that the defendant asked to "put [Wong] on the stand to give some testimony relative to the reasons the [defendant] did not take appropriate actions." A colloquy then transpired concerning Wong's affidavit, after which counsel for both parties argued the merits of the motion. After the parties concluded their arguments, the court announced that it would "take a look at the papers and I will let you know my decision . . . . I will look at the affidavits that are filed with the motion . . . and I'll review it in accordance with the terms of [Practice Book § 17-43]." In response, counsel for the defendant again noted that "we are offering to provide testimony from [Wong] today." The court then stated: "If in fact I need testimony, I will call you back and say I want some testimony. But at this point I'm going to review the matter on the papers and determine whether or not sufficient grounds have been alleged by the defendant to assert that the judgment . . . should be set aside." Counsel for the defendant did not object in any manner but, rather, replied, "I understand."

Our rules of practice require a party, as a prerequisite to appellate review, to distinctly raise its claim before the trial court. See Practice Book § 5-2 ("[a]ny party intending to raise any question of law which may be the subject of an appeal must . . . state the question distinctly to the judicial authority"); see also Practice

Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to trial"). For that reason, we repeatedly have held that "we will not decide an issue that was not presented to the trial court. To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *State* v. *Martin*, 110 Conn. App. 171, 180, 954 A.2d 256 (2008), appeal dismissed, 295 Conn. 192, 989 A.2d 1072 (2010); see also *State* v. *Favoccia*, 119 Conn. App. 1, 14, 986 A.2d 1081 (2010) ("[i]t is axiomatic that issues not properly raised before the trial court ordinarily will not be considered on appeal"), aff'd, 306 Conn. 770, 51 A.3d 1002 (2012). The record before us reveals merely that the defendant offered Wong's testimony; the defendant did not object in any manner or articulate any distinct issue of law when the court indicated that it would "review the matter on the papers . . . ." For that reason, we decline to further consider the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.

