DOCTOR'S ASSOCIATES, INC. *v.* TROY
W. WINDHAM
(AC 34372)

TROY W. WINDHAM *v.* DOCTOR'S
ASSOCIATES, INC.
(AC 34373)

DiPentima, C. J., and Bear and Borden, Js.

Argued September 19—officially released November 26, 2013

*Jonathan M. Starble*, with whom, on the brief, was *Brooke M. Meling*, for the appellant (defendant in the first case, plaintiff in the second case).

*Frank J. Mottola III*, with whom were *Dara Solan* and *Melissa Durso*, and, on the brief, *Ryan M. Budd*, certified legal intern, for the appellee (plaintiff in the first case, defendant in the second case).

*Opinion*

BEAR, J. In AC 34372, Troy W. Windham, the defendant for purposes of that appeal, appeals from the judgment of the trial court confirming an arbitration award rendered in favor of the plaintiff, Doctor's Associates, Inc., the owner of the Subway franchise system (Subway), and he also appeals from the judgment of the court denying his motion to dismiss Subway's prejudgment remedy application. In AC 34373, Windham, the plaintiff for purposes of that appeal, appeals from the judgment of the court denying his application to vacate the arbitration award that had been rendered in favor of Subway. These appeals have been consolidated. On appeal, Windham claims that the court erred (1) in granting Subway's application to confirm the arbitration award and in denying his application to vacate the award, and (2) in denying his motion to dismiss Subway's prejudgment remedy application for lack of subject matter jurisdiction and lack of proper service. We affirm the judgments of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to this appeal. Windham "operated two stores, denominated as stores #6109 and #11581, under two separate franchise agreements. [Subway] claimed that [Windham had] violated the terms of his franchise agreements concerning certain 'decor upgrades,' and it sought to terminate his franchise agreements. [Each agreement] between the parties required that disputes between them 'arising out of or relating to the [a]greement or breach thereof' would be settled by arbitration. [Windham] retained Connecticut counsel [Jonathan M. Starble] regarding the dispute

concerning #11581, and he testified at the hearing regarding that store. On June 16, 2010, an arbitrator ruled in [Windham's] favor in that dispute, concluding that he was excused from timely performing the decor upgrades.

"Although [Windham's] counsel had also contacted [Subway] during prearbitration negotiations concerning store #6109, counsel did not enter a formal 'appearance' with the case manager from the American Dispute Resolution Center, Inc. [center], with respect to that matter. He attests in his affidavit that he was not receiving any notices from the [center] concerning any arbitration proceedings for #6109. [Windham's] counsel attests further that his correspondence with [Subway] led him to believe that the dispute concerning this store was being resolved. [Windham] does not dispute [Subway's] evidence that [Windham] personally received notices from the [center] concerning [Subway's] request for arbitration concerning store #6109, including a March 22, 2010 formal notice of hearing with a hearing date scheduled for July 14, 2010, and a notice dated July 7, 2010, indicating that [Subway] had filed documents in advance of the scheduled arbitration.[1] Nonetheless, [Windham] attests in his affidavit that he believed that the parties were engaged in ongoing discussions and that the formal hearing would not go forward. On July 14, 2010, pursuant to [the center's] rules, the formal arbitration hearing went forward without the presence of either [Windham] or his counsel. The arbitrator found that [Windham] had been sent 'adequate and proper notice' and rendered an award in [Subway's] favor, terminating [Windham's] franchise agreement with respect to store #6109. . . .

---

[1] "[Windham] attests in his affidavit that, through administrative error, he did not open the package received July 7, 2010, until after the arbitration [had] occurred. He makes no representation that he did not receive the March 22, 2010 notice."

"[Windham's] position [before the trial court was] that the behavior of [Subway's] counsel in the ex parte hearing require[d] [the] court to vacate the award. In support thereof, [Windham] submitted to the court a transcript of the deposition testimony of Attorney Jeffrey Allen, [Subway's] counsel, who participated in both arbitration proceedings concerning [Windham]. [Windham] claim[ed] that . . . Allen failed to disclose to the arbitrator the following adverse facts known to him at the time. He did not disclose the existence of the prior arbitration with respect to store #11581, which involved similar issues and was decided in [Windham's] favor less than one month before the formal hearing on store #6109. He failed to disclose that [Windham] had contested that termination. He did not disclose that [Windham] had retained counsel with respect to #6109, who had engaged in negotiations with [Subway] concerning that store. Finally, he failed to disclose that [Windham] had a defense to his failure to perform timely the required decor upgrades, which was that [Subway] had failed to provide to [Windham] certain required design approvals in a timely manner.[2] [Windham] maintains that . . . Allen had a duty to make these disclosures pursuant to [r]ule 3.3 (d) of our Rules of Professional Conduct,[3] and that his failure to do so merits a finding by [the] court that the arbitration award was procured at the ex parte hearing by 'undue means' under [General Statutes] § 52-418 (a) (1)."

The court concluded: "Even if the court accepts the proposition that [Subway's] attorney failed in his duty of full candor before the tribunal by failing to disclose

---

[2] "In contrast, the issues with respect to store #11581 appear to have revolved around an intention to relocate stores."

[3] "Rule 3.3 of the Rules of Professional Conduct is titled 'Candor toward the Tribunal' and requires, in relevant part: '(d) In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse.' "

facts that [Windham] believes were material and adverse to [Subway's] position, [Windham] has not met his burden to demonstrate that the award was procured by 'undue means.' There has been no showing that [Subway's] attorney acted intentionally in bad faith to conceal these facts from the arbitrator, or that he otherwise used underhanded, immoral or conniving means in order to procure the award.[4] [Windham's] remaining arguments—for example, that the arbitrator *could have* given collateral estoppel effect to the prior arbitration award, had he known about it—simply are not sufficient to invalidate or avoid the award because they do not fall within the proscriptions of § 52-418. Rather, [Windham] attempts to advance arguments before [the trial] court that he could have advanced before the arbitrator, had he not been absent from the arbitration proceeding. Although it is troubling that the award was procured without [Windham's] participation, the arbitrator found that [Windham] had been sent 'adequate and proper notice,' and there is no serious dispute that he, in fact, received said notice. In light of the court's limited role in the review of arbitral awards, [Windham's] failure to demonstrate that the award was procured by 'undue means' is fatal to his application to vacate the award." (Emphasis in original.) Accordingly, the court rendered judgments denying Windham's application to vacate the arbitration award and granting Subway's application to confirm that award. After the court rendered judgments, Windham filed a motion to reargue, which the court denied. This appeal followed. Additional facts will be set forth as necessary.[5]

---

[4] "Indeed, [Windham's] counsel, in his brief [to the trial court], declined to 'cast any judgment on whether . . . Allen *intentionally* violated [r]ule 3.3 (d) . . . .' " (Emphasis in original.)

[5] The facts involving Subway's prejudgment remedy application, which are involved in Windham's second claim, will be set forth in part II of this opinion.

I

## APPLICATIONS TO VACATE AND CONFIRM ARBITRATION AWARD

Windham claims that the court erred in granting Subway's application to confirm the arbitration award and in denying his application to vacate the award. He argues that the court "erred in failing to hold that [Subway's] former counsel violated [r]ule 3.3 (d) of the Rules of Professional Conduct, and [that] said violation is sufficient evidence that the arbitration award was procured by 'undue means' under . . . § 52-418 (a) (1)." He further argues that even if the court correctly found no violation of rule 3.3 (d) by counsel, it improperly failed to find that counsel's "failure to disclose material facts in an ex parte proceeding [was] sufficient evidence that the arbitration award was procured by 'undue means' under . . . § 52-418 (a) (1)." We are not persuaded.

Our Supreme Court "has for many years wholeheartedly endorsed arbitration as an effective alternative method of settling disputes intended to avoid the formalities, delay, expense and vexation of ordinary litigation. . . . When arbitration is created by contract, we recognize that its autonomy can only be preserved by minimal judicial intervention. . . . Because the parties themselves, by virtue of the submission, frame the issues to be resolved and define the scope of the arbitrator's powers, the parties are generally bound by the resulting award. . . . Since the parties consent to arbitration, and have full control over the issues to be arbitrated, a court will make every reasonable presumption in favor of the arbitration award and the arbitrator's acts and proceedings. . . . The party challenging the award bears the burden of producing evidence sufficient to invalidate or avoid it, and only upon a showing that it falls within the proscriptions of § 52-418 of the

General Statutes, or procedurally violates the parties' agreement will the determination of an arbitrator be subject to judicial inquiry." (Citations omitted; internal quotation marks omitted.) *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3,* 203 Conn. 133, 145, 523 A.2d 1271 (1987).

"Every reasonable presumption will be made in favor of the arbitrators' acts. *Schwarzschild* v. *Martin,* 191 Conn. 316, 327, 464 A.2d 774 (1983). An arbitration award may not be set aside on a mere showing that the complaining party, or even the court, would have decided the matter differently. *Von Langendorff* v. *Riordan,* 147 Conn. 524, 528, 163 A.2d 100 (1960). An order vacating an arbitration award will be granted, pursuant to § 52-418 (a), only if the court finds any of the following defects: (1) *If the award has been procured by corruption, fraud or undue means*; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter was not made. General Statutes § 52-418 (a)." (Emphasis added; internal quotation marks omitted.) *Alexandru* v. *Cappalli,* 82 Conn. App. 432, 434, 844 A.2d 914 (2004). In order to grant a motion to vacate on these grounds, however, the trial court must find that the movant has "produce[d] evidence sufficient to invalidate . . . [the award]." *Von Langendorff* v. *Riordan,* supra, 527; see *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3,* supra, 203 Conn. 156 (concluding that there was "no evidence whatsoever that the plaintiff procured the [arbitration] award by undue means").

Section 52-418 (a) (1) has not been the subject of substantial judicial discussion, nor have its terms been defined by our legislature; see D. Rosengren, 13 Connecticut Practice Series: Construction Law (2005) § 9:11, p. 195 ("[t]here is sparse authority interpreting the first ground [procuring an award by corruption, fraud, or undue means]"); and the specific term "undue means" does not have a clear or obvious plain language meaning. See General Statutes § 1-2z. When a state statute is in need of construction and Connecticut authority is sparse, we frequently have looked to analogous federal statutes for guidance in the interpretation of our state legislation. See *Horton* v. *Meskill*, 187 Conn. 187, 192, 445 A.2d 579 (1982) (where state precedent is lacking, it is appropriate to look to authorities under comparable federal statute). This repeatedly has been the case in construing § 52-418. See, e.g., *Hartford Municipal Employees Assn.* v. *Hartford*, 128 Conn. App. 646, 653–54, 19 A.3d 193 (construing § 52-418 [a] [3] consistent with 9 U.S.C. § 10 [a] [3]), cert. denied, 301 Conn. 934, 23 A.3d 730 (2011); *McCann* v. *Dept. of Environmental Protection*, 288 Conn. 203, 215, 952 A.2d 43 (2008) (same); *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 475–76, 899 A.2d 523 (2006) (same); *Garrity* v. *McCaskey*, 223 Conn. 1, 8 n.7, 612 A.2d 742 (1992) ("federal statute that provides for vacating an arbitration award, 9 U.S.C. § 10 [d], is virtually identical to General Statutes § 52-418 [a] [4]").

For purposes of the present case, the relevant portion of the Federal Arbitration Act, 9 U.S.C. § 10 (a), provides in relevant part: "In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration— (1) where the award was procured by corruption, fraud, or undue means," which virtually is identical to § 52-418 (a) (1) of our General Statutes.

Under 9 U.S.C. § 10 (a) (1), "[t]he term undue means has generally been interpreted to mean something like fraud or corruption. [*Three S Delaware, Inc.* v. *Dataquick Information Systems, Inc.*, 492 F.3d 520, 529 (4th Cir. 2007)]; see also [*National Casualty Co.*] v. *First State Ins. Group*, 430 F.3d 492, 499 (1st Cir. 2005) (The best reading of the term undue means under the maxim *noscitur a sociis* [it is known from fellows or allies] is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either.)." (Emphasis altered; internal quotation marks omitted.) *MCI Constructors, LLC* v. *Greensboro*, 610 F.3d 849, 858 (4th Cir. 2010).

"The term 'undue means' [in 9 U.S.C. § 10 (a) (1)] must be read in conjunction with the words 'fraud' and 'corruption' that precede it in the statute. See *Drayer* v. *Krasner*, 572 F.2d 348, 352 (2d Cir.), cert. denied, 436 U.S. 948, 98 S. Ct. 2855, 56 L. Ed. 2d 791 (1978). Consistent with the plain meaning of fraud and corruption, and with the limited scope of judicial review of arbitration awards, other circuits have uniformly construed the term undue means as requiring proof of intentional misconduct." *PaineWebber Group, Inc.* v. *Zinsmeyer Trusts Partnership*, 187 F.3d 988, 991 (8th Cir. 1999). Accordingly, to establish "undue means" under 9 U.S.C. § 10 (a) (1), a party must prove "nefarious intent or bad faith"; see id., 993; or conduct that is "immoral if not illegal." *A.G. Edwards & Sons, Inc.* v. *McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992).

In *National Casualty Co.* v. *First State Ins. Group*, supra, 430 F.3d 499, the United States Court of Appeals for the First Circuit offered the following explanation: "Section 10 (a) (1) permits vacatur '[w]here the award was procured by corruption, fraud, or undue means.' . . . The phrase 'undue means' in the statute follows the terms 'corruption' and 'fraud.' It is a familiar principle of statutory construction that a word should be

known by the company it keeps. . . . The best reading of the term 'undue means' under the maxim *noscitur a sociis* is that it describes underhanded or conniving ways of procuring an award that are similar to corruption or fraud, but do not precisely constitute either." (Citations omitted; emphasis in original.) The court then explained that "intentional malfeasance" is required to "justif[y] vacatur under the statute." Id. We are persuaded that the interpretation of the phrase "undue means" by the federal Circuit Courts of Appeals cited previously is applicable to § 52-418.[6]

In the present case, Windham contends that the arbitration award was defective because it was procured by Subway by the use of undue means in violation of § 52-418 (a) (1). Windham first argues that Allen violated rule 3.3 (d) of the Rules of Professional Conduct and that such a violation is "exactly the type of conduct that should be considered conclusive evidence of undue means under § 52-418 (a) (1)." Windham next argues that even if Allen did not violate rule 3.3 (d), he nonetheless still procured the award by undue means because he failed to disclose material facts to the arbitrator. Windham asserts that when neither he nor his attorney attended the arbitration hearing, Subway's attorney had an obligation under rule 3.3 (d) of the Rules of Professional Conduct or otherwise to inform the arbitrator of all material facts, including that Windham had procured a favorable result in an earlier arbitration proceeding concerning a different franchise store but on a similar issue, that Windham had retained Connecticut counsel, that counsel for both parties had been engaged in discussions, that they had taken actions to attempt to resolve their dispute, and that Windham had a good

---

[6] Although it occurred long before the enactment of § 52-418, Chief Justice Swift set forth a similar rule in *Allen* v. *Ranney*, 1 Conn. 569, 571 (1816), when he stated that without evidence of "fraud and misbehaviour" of a party, an arbitration award cannot be set aside.

faith defense to assert. He further argues that Subway's failure to inform the arbitrator of these material facts amounted to the procurement of the arbitration award by "undue means." He also contends in his reply brief that the arbitrator's decision "was based on . . . Allen's inaccurate and incomplete representations of the facts to the arbitrator." We agree with the trial court that there is no evidence that Allen acted improperly in this case.

After analyzing the claims and arguments of Windham on appeal, it appears that he and Starble, essentially, are attempting to fault Allen for not protecting Windham's interests in the face of their nonfeasance, by accusing Allen of violating rule 3.3 of the Rules of Professional Conduct by not telling the arbitrator about Windham's alleged claims and defenses. We note that the Rules of Professional Conduct are not to be used in the way that Windham and Starble have used rule 3.3 in this appeal: "As we previously have recognized, however, the rules governing the professional conduct of attorneys, without more, do not give rise to a cause of action. See *Mozzochi* v. *Beck*, 204 Conn. 490, 500, 501 n.7, 529 A.2d 171 (1987); see also *Standish* v. *Sotavento Corp.*, 58 Conn. App. 789, 796–97, 755 A.2d 910 ('[v]iolation of [a rule of professional conduct] should not give rise to a cause of action'), cert. denied, 254 Conn. 935, 761 A.2d 762 (2000); *Noble* v. *Marshall*, 23 Conn. App. 227, 231, 579 A.2d 594 (1990) ('the Rules of Professional Conduct do not of themselves give rise to a cause of action'). Indeed, one of the introductory provisions of the Rules of Professional Conduct expressly provides that a '[v]iolation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore,

the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.' Rules of Professional Conduct, scope, in Connecticut Practice Book (2004) p. 3; accord *Mozzochi* v. *Beck,* supra, 501 n.8." *Biller Associates* v. *Peterken,* 269 Conn. 716, 722–23, 849 A.2d 847 (2004).

Moreover, it is elementary that if Windham wanted his claims and defenses presented to the arbitrator, Windham should have read and understood in a timely manner the import of the mail from the center and attended the hearing himself, or he should have had his attorney file an appearance in the matter so that the attorney would have received all mailings from the center, including notice of the scheduled date of the hearing. See, e.g., *Dziedzic* v. *Pine Island Marina, LLC,* 143 Conn. App. 644, 652–53, 72 A.3d 406 (2013). We also do not agree that in the context of this arbitration, it was Allen's responsibility to notify Starble, a nonappearing attorney, of the scheduled hearing, nor do we agree with the implication of Starble's argument that, in the context of this arbitration, Allen had an obligation to present Windham's case or otherwise to assume any responsibility because of the absence of Windham and Starble and the possible repercussions therefrom. We conclude, moreover, that there is no evidence that Allen improperly offered an "inaccurate and incomplete representation of the facts to the arbitrator," as is alleged by Windham and Starble.

In this case, the court specifically found that Windham had presented no evidence that Allen had procured the arbitration award by undue means because there was no evidence that Allen had acted intentionally to conceal material facts from the arbitrator in order to procure the award. The court also noted that Windham, in his brief to the court, "declined to 'cast any judgment on whether . . . Allen intentionally violated [r]ule 3.3 (d) . . . .'" (Emphasis omitted.) We agree with the court that Windham has presented no evidence of any improper or unethical behavior on the part of Allen. The court understood that Windham had failed to be present at the arbitration hearing or to have his attorney file an appearance in the arbitration and attend the hearing on his behalf. Accordingly, we conclude that the court properly denied Windham's application to vacate the award, and it properly granted Subway's application to confirm the award.

## II

## MOTION TO DISMISS

Windham next claims that the court erred in denying his motion to dismiss Subway's prejudgment remedy application for lack of subject matter jurisdiction and lack of proper service.

The following additional facts are relevant to our consideration of this claim. After the court rendered judgment confirming the arbitration award, Subway filed an application for prejudgment remedy, pursuant to General Statutes § 52-278a et seq., to secure its rights with respect to the award of damages against Windham. On November 8, 2012, Windham filed a motion to dismiss the application on the ground that the court lacked subject matter jurisdiction because the "case involves the confirmation of an arbitration award and not a 'civil action' as required by Connecticut prejudgment remedy statutes" and on the ground that he was not served

properly. The court denied Windham's motion to dismiss and, after a hearing on the merits, rendered judgment granting Subway's prejudgment remedy application. Windham then amended its appeal to this court.

## A

### Subject Matter Jurisdiction

Windham claims that the court erred in denying his motion to dismiss for lack of subject matter jurisdiction over the application for prejudgment remedy.[7] We are not persuaded.

"A motion to dismiss tests . . . whether . . . the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss [is] de novo. . . . Furthermore, [w]e have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction." (Internal quotation marks omitted.) *Ungerland* v. *Morgan Stanley & Co.*, 132 Conn. App. 772, 775, 35 A.3d 299 (2012).

In support of his claim that the court lacked subject matter jurisdiction in this case, Windham argues that, because "a prejudgment remedy is a special statutory right [such a remedy] is only available in a civil action [and] [a]n application to confirm an arbitration award is not a civil action." Subway responds that, although

---

[7] Windham does not contest the granting of the prejudgment remedy application on its merits.

Windham correctly asserts that a proceeding based on an application to confirm an arbitration award is not a civil action, the focus in this case should not be on the *proceeding* to confirm the award but should be on the *judgment* of the court that followed the proceeding because the prejudgment remedy in the present case was filed to secure the court's judgment, already rendered, confirming the arbitration award. Subway further argues that, pursuant to General Statutes § 52-421 (b),[8] the *judgment* of the court granting the application to confirm an arbitration award is "subject to *all the provisions of law* relating to a judgment or decree in a civil action . . . ." (Emphasis added; internal quotation marks omitted.) Therefore, it argues, the judgment has the full force and effect of any civil judgment. We conclude that the plain language of the statute supports Subway's argument. See also *Burnham* v. *Carr*, 53 Conn. App. 425, 427, 431, 730 A.2d 643 (commenting with approval on process of applying for prejudgment remedy to secure assets while case is on appeal from judgment confirming arbitration award), cert. denied, 250 Conn. 901, 734 A.2d 980 (1999).

Our review of Windham's claim requires us to examine § 52-421. "Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply.

[8] General Statutes § 52-421 (b) provides: "The judgment or decree confirming, modifying or correcting an award shall be docketed as if it were rendered in a civil action. The judgment or decree so entered shall have the same force and effect in all respects as, and be subject to all the provisions of law relating to, a judgment or decree in a civil action; and it may be enforced as if it had been rendered in a civil action in the court in which it is entered. When the award requires the performance of any other act than the payment of money, the court or judge entering the judgment or decree may direct the enforcement thereof in the manner provided by law for the enforcement of equitable decrees."

. . . [W]e seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Middlesex Mutual Assurance Co.* v. *Komondy*, 120 Conn. App. 117, 125, 991 A.2d 587 (2010).

Section 52-421 (b) provides in relevant part that "[t]he judgment or decree confirming . . . an award shall be docketed as if it were rendered in a civil action. The judgment or decree so entered shall have the same force and effect in all respects as, and be subject to all the provisions of law relating to, a judgment or decree in a civil action . . . ."

Although Windham relies on *Waterbury* v. *Waterbury Police Union, Local 1237*, 176 Conn. 401, 408, 407 A.2d 1013 (1979), for the proposition that "proceedings brought pursuant to § 52-420 to confirm . . . arbitration awards are not civil actions within the meaning of title 52," under the plain language of § 52-421 (b), the *judgment* confirming an arbitration award, in all respects, is to be treated as a civil judgment, having "the same force and effect" thereof. General Statutes § 52-421 (b). Therefore, although the proceedings themselves are not civil actions within the meaning of title 52, the judgment rendered following those proceedings has "the same force and effect in all respects as . . . a judgment . . . in a civil action . . . ." General Statutes § 52-421 (b). Accordingly, on the basis of the clear

language of the statute, we conclude that Windham's claim fails.

## B

## Service of Process

Windham next claims that the court erred in denying his motion to dismiss Subway's prejudgment remedy application for lack of proper service under either General Statutes §§ 52-278c or 52-278m. He also claims that the court improperly held that even if service was improper, Windham failed to demonstrate any prejudice by the defect, arguing that he need not show prejudice because the statutory requirements for service require strict adherence.[9] We are not persuaded.

"[A] challenge to the jurisdiction of the court presents a question of law over which our review is plenary. . . . [T]he Superior Court . . . may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction. . . . [A]n action commenced by . . . improper service must be dismissed." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Alldred* v. *Alldred*, 132 Conn. App. 430, 433–34, 31 A.3d 1185 (2011), appeal dismissed, 303 Conn. 926, 35 A.3d 1075 (2012). Issues involving statutory construction also raise questions of law, over which we exercise plenary review. *Middlesex Mutual Assurance Co.* v. *Komondy*, supra, 120 Conn. App. 125.

---

[9] The court specifically found that Windham "does not claim any prejudice, nor was there any. This motion [to dismiss] was fully briefed and argued weeks [after it was filed]; and the hearing on the application has not been held pending [the outcome of] this motion. [Windham] will have had ample notice, an opportunity to be heard, and no deprivation of property rights has been executed." Windham does not challenge these findings, which fully are supported by the record.

Windham argues that the court erred in denying his motion to dismiss the application on the ground that service was not in compliance with the prejudgment remedy statutes. The following additional facts are relevant to our discussion of this claim. Subway filed with the court its application for prejudgment remedy on September 24, 2012. Thereafter the court fixed a date for the hearing, signed the order of hearing and notice, and returned the original documents to Subway with an order that Subway serve Windham on or before October 18, 2012. On October 18, 2012, Subway e-mailed the application for prejudgment remedy to Windham's attorney and mailed a paper copy to him that same day. According to Windham, Subway's service of process on October 18, 2012, did not comply with the service requirements set forth in the prejudgment remedy statutes, specifically §§ 52-278c (a) (4) and 52-278m. We are not persuaded.

Section 52-278c (a) provides in relevant part: "Except as provided in sections 52-278e and 52-278f, any person desiring to secure a prejudgment remedy shall attach his proposed unsigned writ, summons and complaint to the following documents . . . (4) A form of summons directed to a proper officer commanding him to serve upon the defendant at least four days prior to the date of the hearing, pursuant to the law pertaining to the manner of service of civil process, the application, a true and attested copy of the writ, summons and complaint, such affidavit and the order and notice of hearing . . . ."

Section 52-278m provides: "Whenever a prejudgment remedy is sought under the provisions of sections 52-278h or 52-278i against a party who has previously filed a general appearance in such action, personal service of any application or order upon such party shall not be required, unless ordered by the court, but any such application or order may be served in the same manner

as any motion in such action." With respect to § 52-278m specifically, Windham argues that Subway's service did not comply with either Practice Book § 10-12 or § 11-1,[10] regarding the service of motions. He argues that these sections of the Practice Book require that the party serving a motion must do so on the same day that the motion is filed with the court. Windham contends that the statutory service requirements for an application for prejudgment remedy necessitate strict compliance because such a remedy is a statutory right in derogation of the common law.

Subway argues that service was proper under § 52-278m and under General Statutes § 52-278h. Section 52-278h provides: "The provisions of this chapter shall apply to any application for prejudgment remedy filed by the plaintiff at any time after the institution of the action, and the forms and procedures provided therein shall be adapted accordingly." Subway also argues that the time requirements advanced by Windham are contrary to and incompatible with § 52-278c (c) and (d). Section 52-278c (c) provides: "The clerk upon receipt of all such documents in duplicate, if he finds them to be in proper form, shall fix a date for a hearing on the application and sign the order of hearing and notice except that if the application includes a request for a temporary restraining order, the court or a judge of the court shall act on the application for the temporary

---

[10] Practice Book § 10-12 provides in relevant part: "(a) It is the responsibility of counsel . . . to serve on each other party who has appeared one copy of every pleading subsequent to the original complaint, every written motion . . . and every paper relating to discovery, request, demand, claim, notice or similar paper . . . . When a party is represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the judicial authority. . . ."

Practice Book § 11-1 (c) provides in relevant part: "[A] motion, request, application or objection shall be served on all parties as provided in Sections 10-12 through 10-17 and, when filed, the fact of such service shall be endorsed upon."

restraining order, fix a date for the hearing on the prejudgment remedy and sign the order of hearing and notice. The entry fee shall be then collected and the duplicate original document shall be placed in the court file." Section 52-278c (d) then provides: "The clerk shall deliver to the applicant's attorney the original of the documents for service. Service having been made, the original documents shall be returned to the court with the endorsement by the officer of his actions."

Subway argues that the clear requirements of the prejudgment remedy statutes demonstrate that it could not have effectuated proper service on Windham on September 24, 2012, because the court had not yet fixed a date for the hearing, signed the order of hearing and notice, or returned the original documents to Subway, all of which were necessary to trigger Subway's obligation to provide notice to Windham's attorney. Furthermore, it argues, the court's order specified that it was to provide service on or before October 18, 2012, and it complied with that court's order. We agree.

According to § 52-278h, if the application for prejudgment remedy was filed "after the institution of the action," the forms and the procedures "shall be adapted accordingly." Section 52-278m provides that personal service on a party is not necessary if an appearance previously has been filed, unless the court orders otherwise. Although § 52-278m also states that the application for prejudgment remedy "may be served in the same manner as any motion in such action," § 52-278c (c) provides that the clerk "shall fix a date for the hearing," "sign the order of hearing and notice," and place one "duplicate original document . . . in the court file." Section 52-278c (d) then clearly provides that the clerk "shall deliver to the applicant's attorney the original of the documents for service. Service having been made, the original documents shall be returned to the court with the endorsement by the officer of his

actions." Although § 52-278m provides that service *may be made* in the same manner as a motion, § 52-278c (c) and (d) set forth the specific procedure to be followed, and, in this case, the court specifically ordered Subway to make service on or before October 18, 2012, and Subway complied with that order. In this case, our review of the record convinces us that Subway complied with the relevant statutory procedures and the order of the court.

The judgments are affirmed.

In this opinion the other judges concurred.